JOHN A. NORTHROP, appellant,

*vs.*

CLARENCE HALE, administrator.

Cumberland.    Opinion June 10, 1884.

*Evidence.    Pedigree.    Declarations.*

On the question of pedigree, declarations are admissible, (1) When it appears by evidence *dehors* that the declarant was lawfully related by blood or marriage to the person or family whose history the facts concern. (2) That the declarant was dead when the declarations were tendered, and (3) That they were made *ante litem motam.*

Thus, in determining who are the rightful distributees of an intestate estate, the declarations of the intestate's sister (since deceased) in whose family the claimant was not only born and brought up, but in which the intestate herself also lived, when the claimant was born, and for several years thereafter, are admissible, when made *ante litem motam* for the purpose of showing that the claimant was the natural son of the intestate who had not then been married.

ON EXCEPTIONS.

An appeal from the decree of the judge of probate.

The opinion states the case.

*Nathan and Henry B. Cleaves,* and *M. P. Frank,* for the plaintiff, cited: 1 Greenl. Ev. § § 103, 104; 1 Whar. Ev. § 208; *Waldron* v. *Tuttle,* 4 N. H. 378; *Vowles* v. *Young,* 13 Ves. 146; *Goodright* v. *Moss,* Cowper, 594; *Tyler* v. *Flanders,* 57 N. H. 626; *Haddock* v. *B. & M. R. R.* 3 Allen, 300; *Hargrave* v. *Hargrave,* 2 C. & K. 701 (61 E. C. L. 702); *Barnum* v. *Barnum,* 42 Md. 304; *Canton* v. *Bentley,* 11 Mass. 442; *Stein* v. *Bowman,* 13 Pet. 220; *Ellicott* v. *Pearl,* 10 Pet. 434; Starkie, Ev. * 1104; Reynold's Stephen, Ev. 53.

*Drummond and Drummond,* and *Clarence Hale,* for the defendant.

The testimony offered was properly excluded.

1. The rule admitting hearsay, or reputation, in certain questions of pedigree, cannot be extended to admitting testimony of

a deceased relative to prove illegitimacy. The admission in certain cases of testimony as to declarations of certain relatives, in matters of birth, descent and kindred questions is an exception to the familiar rules of evidence, excluding hearsay, and is only permitted from the extreme difficulty of getting any testimony on such subjects. Such testimony is always looked upon with disfavor by courts, and only admitted from the necessity of the case, on the ground that the statements of members of the immediate family of a person, previous to a controversy, about such person's birth and descent are entitled to weight as being the best evidence the case affords. But courts have not permitted illegitimacy as a substantive fact to be proved by such evidence, for the reason that "a child, if illegitimate, can have no family;" and therefore the reason of the law in respect to family admissions fails. Taylor, Ev. (Ed. of 1872,) 535; Phillips, Ev. (Ed. of 1859,) 272; *Crispin* v. *Doglioni*, 3 S. & T. 44, and 8 Law Times Reports, 91.

For example, the declarations of an illegitimate child as to the pedigree of himself or any other member of his father's family are not admitted in testimony, for the reason that it is not distinctively a "family admission," the bastard not having a family. *Craufurd* v. *Blackburn*, 17 Md. 56; *Doe d. Bamford* v. *Barton*, 2 Moody and Robinson, 28; *Chapman* v. *Chapman*, 2 Conn. 349.

In the case at bar, the court will see the extreme danger of admitting such testimony; the petitioner does not offer the declaration of a mother to establish the legitimacy of her own offspring, but the testimony of a woman alleged by him to be his aunt, to establish the fact that the child was the illegitimate child of another woman, and that the other woman was the sister of the declarant. There is no pretence that these declarations were ever acted on or remembered by Diana J. Johnson until after the contest arose. The risk of perjury in receiving evidence of a witness who undertakes to state what he heard a person say who is long deceased, is freely commented on by courts. An unprincipled witness has no fear of being contradicted and punished; an imaginative witness, or one who

!has long and morbidly gone over his case in his mind, may have really wrought himself up to believing that he heard a deceased person say what such person never thought of saying. Taylor on Ev. *supra*; *Crouch* v. *Hooper*, 16 Beavan, 186; *Carter* v. *Buchanan*, 9 Ga. 541.

2. The declarations of Mary Northrop do not appear from the exceptions, to have been made to a person who had any interest in ascertaining the truth in relation to the matter. It is a requisite of such testimony, that in order to be admissible, it must appear that the person who offers to show that such declaration was made to him, must also show that he had some interest either as a relative, heir, creditor, or in some way in learning from the declarant the truth of the matter. Else courts cannot presume that the declarant would have made solemn and important declarations or that the witness himself would have that interest in the subject which would enable him to remember for many years and to state correctly. This position is fully sustained in recent cases cited in the Vienna Juristische Blaetter; see also Alb. Law Jour. vol. 24, p. 444; see *Cuddy* v. *Brown*, 78 Ill. 415; *Jones* v. *Jones*, 36 Maryland, 457.

3. It does not appear from the exceptions, that the excluded testimony was in respect to declarations which were so clear, explicit, and given under such circumstances as to be admissible in evidence. The case shows simply that the excluded declarations were "relative to the birth and parentage of said John A. Northrop." But not all statements relative to birth and parentage are to be received in testimony. For example, statements which are not clear or explicit, are not admissible; nor statements given under circumstances to indicate bias or prejudice. The case must clearly bring the excluded testimony within the rule admitting such testimony, or the ruling of the judge at *nisi prius* cannot of course be overthrown.

VIRGIN, J. This is an appeal from a decree of the judge of probate, wherein he ordered a distribution of an intestate estate and adjudged, against the claim of the appellant, that he was not the natural son of the intestate, but was the legitimate son of the intestate's sister.

In the supreme court of probate to which the appeal was taken, the same question was submitted to a jury who found against the appellant.

At the trial of the issue it appeared *inter alia* that the appellant was born in Steubenville, Ohio, and was brought up there in the family of the intestate's sister, in which also the intestate resided at the time of the appellant's birth and for several years thereafter. The appellant tendered the "declaration of Mary Northrop (the intestate's sister) relative to the birth and parentage of John A. Northrop," the appellant. What the specific declarations were, the bill of exception fails to disclose. It is sufficiently general to include declarations that the appellant was the lawful son of the declarant, which was claimed by the appellee. The admissibility of such a declaration would not be successfully challenged under any known rule of evidence. For the practice in such cases seems to be that some evidence of the requisite relationship (though the exact degree may not be essential perhaps, *Vowles* v. *Young*, 13 Ves. 140) *dehors* the declarations must be shown before they can be admitted. *Fuller* v. *Randall*, 2 Moore & P. 24; *Plant* v. *Taylor*, 7 Hurl. & Nor. 237; *Gee* v. *Ward*, 7 E. & B. 514. And this evidence is primarily addressed to the presiding justice, who, before admitting the declarations, must be satisfied that a *prima facie* case of the requisite relationship has been made out. *Jenkins* v. *Davis*, 10 Q. B. 313, 322; *Hitchins* v. *Eardley*, L. R. 2 P. & D. 248. And the facts shown, the birth, place of birth, the bringing up and the name of the appellant, are ample *prima facie* evidence of relationship to warrant the admission of the declaration mentioned. 4 Camp. 416; *Viall* v. *Smith*, 6 R. I. 417. Still there is some apparent discrepancy in the practice. *Blackburn* v. *Crawford*, 3 Wall. 175; *Jewell* v. *Jewell*, 1 How. 219, 231; *Alexander* v. *Chamberlain*, 1 Thomp. & Cook (N. Y. Sup. Ct.) 600.

But the appellant could not be aggrieved by the exclusion of a declaration which would disprove his claim and his exception for such an exclusion could not therefore be sustained.

Yet, considering the appellant's claim together with the facts,

and admissions disclosed in the bill of exception, we can have no doubt that the declarations tendered and excluded had a direct bearing upon the issue, and that the question intended to be raised by the parties, is : Whether, in determining who are the rightful distributees of an intestate estate, the declarations of the intestate's sister ( since deceased ), in whose family he was not only born and brought up, but in which also the intestate herself lived when the appellant was born and for several years thereafter, are admissible for the purpose of showing that he was the natural son of the intestate, who had not then been married.

All of the authorities seem to concur in holding that while her declarations would be competent to show the appellant to be her own illegitimate son, born before her marriage, yet under a rule founded, as Lord MANSFIELD said, "in decency, morality and policy, " her declarations would not be allowed to prove her own son illegitimate if born in wedlock. *Goodright* v. *Moss*, Cowp. 591; 1 Greenl. Ev. § § 253, 344; *Haddock* v. *B. & M. Railroad*, 3 Allen, 300; *Abington* v. *Duxbury*, 105 Mass. 287. Can her declarations be admitted to show the illegitimacy of her unmarried sister's son born and brought up in her own family? This involves no bastardizing of her own issue.

Formerly the declarations of servants, physicians and intimate friends have been admitted at *nisi prius* in the English courts. But in *Johnson* v. *Lawson*, 2 Bing. 86, the court unanimously rejected- the declarations of a deceased housekeeper. BEST, C. J., remarked that the admission of evidence in such cases must be subject to some limits; limiting declarants to relatives connected by blood or marriage afforded a certain and intelligible rule; and if that were passed, an almost endless inquiry as to the degree of intimacy between the family and the declarant might be involved. Since that decision, all modern authorities exclude declarations coming from neighbors, intimate acquaintances, etc. of the family, as being mere hearsay evidence. *Vowles* v. *Young*, 13 Ves. 147 ; *Whitelocke* v. *Baker*, 13 Ves. 514; *Jackson* v. *Browner*, 18 Johns, 37, 39. It has, therefore, become a universally recognized exception to the general rule

excluding hearsay, based on various sound considerations, that as to certain facts of family history, usually denominated pedigree, comprising *inter alia*, birth, death and marriage, together with their respective dates, and, in a qualified sense, legitmacy and illegitimacy, declarations are admissible ; (1) When it appears by evidence *dehors* the declarations that the declarant was lawfully related by blood or marriage to the person or family whose history the facts concern ; (2) That the declarant was dead when the declarations were tendered ; and (3) That they were made *ante litem motam*. 1 Greenl. Ev. § § 103, *et seq.* & notes ; 1 Whart. Ev. § § 201, *et seq.* & notes ; 1 Taylor, Ev. § § 571, *et seq.* & notes ; Best, Prin. Ev. ( Am. ed. ) § 498 & notes.

Lord Ch. Eldon said such declarations "are admissible upon the principle that they are the natural effusions of a party who speaks upon an occasion when his mind stands in an even position without any temptation to exceed or fall short of the truth, . . that they must be from persons having such connection with the party to whom they relate, that it is natural and likely, from their domestic habits and connections, that they are speaking the truth and cannot be mistaken. "

Lord Ch. Erskine declared that the " law resorts to hearsay evidence of relations upon the principle of interest in the person from whom the descent is to be made out. " *Vowles* v. *Young*, *supra*. This view was adopted by Prof. Greenleaf. 1 Greenl. Ev. § 103. And Mr. Taylor sums up the authorities by declaring such declarations admissible coming from such sources, as relatives " may be supposed to have the greatest interest in seeking, the best opportunities for obtaining, and the least reason for falsifying, information on the subject. " 1 Taylor, Ev. § 571. Do not the qualifications of Mrs. Northrop come fully up to these requisitions?

In *Goodright* v. *Moss*, Cowp. 571, the declarations of parents were held admissible, after their decease, to prove that their son was born before their marriage and was therefore illegitimate ; and this case is not questioned on this point in Berkley, Peerage, case 4, Camp. 401.

In *Vowles* v. *Young, supra,* a new trial was granted because the declarations of a husband that his wife was illegitimate, were rejected.

In *Haddock* v. *B. & Maine Railroad, supra,* a mother's declarations were admitted to prove the illegitimacy of her daughter by showing that the mother was never married.

So, where the question was whether the plaintiff's mother was the legitimate child of the ancestor, whose land was in dispute and the record showed the latter's marriage at a certain date, the ancestor's declaration—that "unless he made a will, Louisa (plaintiff's mother) could get nothing,"—was held competent to go to the jury on the question of her illegitimacy. *Viall* v. *Smith,* 6 R. I. 417. See also *Barnum* v. *Barnum,* 42 Md. 251,304.

It would seem, therefore, that the declarations of the intestate would be admissible to show that the appellant was her illegitimate son; and if the mother's declarations would be, why would not be those of the mother's sister, in whose family the child was born and brought up, and in which the mother lived at the time and for years after?

It is urged that there are some English authorities which somewhat tend otherwise.

In *Bamford* v. *Barton,* 2 Moo. and R. 28, where one K. died seized of land, leaving none but illegitimate children, to whom he willed for life, his property with remainder to his own lawful heirs, who brought ejectment claiming the devisees for life to be dead; and to prove it, offered the declarations of one of them, who had since died, to prove the decease of the other, PATTERSON, J., at *nisi prius,* held the declarations inadmissible on the ground that the declarant was not, in point of law, a member of the family of his reputed father." We also entertain the same opinion, and for the same reason.

In *Crispin* v. *Doglioni,* 2 S. & Tr. 44, decided in the probate court in England, in 1863, the plaintiff claimed to be the natural son of the intestate. To prove it, he tendered the declarations of a deceased brother of the intestate. Sir C. CRESWELL, after remarking there was no case in point, held the declarations inadmissible, saying: "The admissibility of

hearsay evidence is exceptional, and ought not to be carried further than the decisions in the books, for it is a departure from the first rule of evidence. I can well understand that when a matter is likely to be discussed and well known in a family, a member of the family may be allowed to give evidence of it; but in this case the plaintiff, according to his own account, is *fillius nullius*, by our law. The question is whether a declaration of one brother may be admitted as to another brother having had intercourse with a woman, and having had a child by her; I think it ought to be excluded." We cannot perceive any objection to this ruling. No one can pretend that it comes within the exception admitting hearsay, for the putative father has no relationship with his bastard son, and hence the case is not applicable to the case at bar. Moreover, the case is especially sound in England, and it might there be considered as applicable to a case having the same facts as in the case at bar. For by the common law, in order to "render odious illicit commerce between the sexes and to stamp disgrace on the fruits of it, notwithstanding the punishment usually fell upon the innocent, it was thought wise to prohibit the offspring from tracing their birth to a source which is deemed criminal by law." *Cooley* v. *Dewey*, 4 Pick. 95. Hence bastards were said by the common law to be the "children of nobody," and could not transmit by descent except to their own offspring. 1 Black. Com. 459; 2 Kent's Com. (12th ed.) 212-13; *Hughes* v. *Decker*, 38 Maine, 153, 160. And such was the law in this state until 1838, when the legislature, as have the legislatures of several other states, ameliorated the rights of illegitimate children. "This relaxation in the laws in so many states," says Ch. KENT, "of the severity of the common law, rests upon the principle that the relation of parent and child, which exists in this unhappy case, in all its native and binding force, ought to produce the ordinary consequence of consanguinity." 2 Kent's Com. (12th ed.) 214. By the statutes of this state, "an illegitimate child is the heir of his mother," and "his estate descends to his mother when he dies intestate without issue." R. S., c. 75, § § 3 & 4.

We are of the opinion, therefore, that inasmuch as the relationship of sister existed between the intestate and the declarant, and, by force of the statute, that of mother and son between the intestate and the appellant, the declarations came literally within the exception and are consequently admissible; and that the jury should be allowed to pass upon their weight, if they find they were ever made, in connection with the other testimony in the case.

*Exceptions sustained.*

PETERS, C. J., WALTON, DANFORTH, SYMONDS and EMERY, JJ., concurred.