302

SOPHIA B. GATCHELL AND FRANCES JEFFREY

*vs.*

MARION G. CURTIS AND HARVEY J. GIVEN,

AS ADMINISTRATOR WITH THE WILL ANNEXED OF THE

ESTATE OF JAMES D. CURTIS, DECEASED.

Cumberland.       Opinion, August 8, 1936.

*Ellis L. Aldrich,*
*Sherwood Aldrich,* for plaintiff.
*Joseph H. Rousseau,* for Marion G. Curtis.
*Joseph A. Aldred,* for Harvey J. Given, Admr.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J. This is a bill in equity seeking an interpretation of the will of James D. Curtis, who died a resident of West Bath in the County of Sagadahoc. It is brought by the legatees under the will against the widow and the administrator, c. t. a. The answers of the two defendants admit the facts as set forth in the bill. The case is before us on report on bill and answers.

The decedent, James D. Curtis, was the adopted child of James W. Curtis and Anna Curtis, who were residents of Brunswick in the County of Cumberland. The decree of adoption is dated April 20, 1895, and complied with the statutory provisions in force at that time. It reads in part as follows:

"You therefore assume the relations of parents to said child, and will hereafter cherish, support, educate, and otherwise provide for him as though you were his natural parents and his natural parents are divested of all legal rights in respect to him, and he is free from all legal obligations of obedience and maintenance in respect to them; and he is, for the custody of the person and all rights of inheritance, obedience and maintenance, to all intents and purposes, your child the same as if born to you in lawful wedlock, except that he shall not inherit property expressly limited to the heirs of your body, nor property from your lineal or collateral kindred by right of representation."

The adopted son received under the will of his adopting father, who died in 1910, two parcels of real estate located in Brunswick which, according to the inventory of the decedent's estate, are

worth $34,850. These two parcels comprise his entire estate. The plaintiff, Mrs. Jeffrey, under his will is given a legacy of $2000. This legacy can be paid and debts and expenses of administration satisfied only out of the proceeds of the sale of this real estate. Under the will the widow, Marion G. Curtis, was given "that portion of my estate which the laws of the State of Maine provides, and no more." The decedent died leaving no issue and no blood relations, but he was survived by a brother of his adopting mother and by a sister of his adopting father. The widow, Marion G. Curtis, under the provisions of R. S. 1930, Chap. 89, Sec. 13, waived the provisions of the will and claimed her right and interest by descent. Her contention is that by so doing she became entitled to that portion of her late husband's estate which would have descended to her had he died without a will, and that under the provisions of R. S. 1930, Chap. 89, Sec. 1, this was the entire estate because he was survived by no kindred. It is of course conceded by all that there being no issue, the widow takes one-half of the estate, two-thirds of which interest, it being all real estate, is free from payment of debts. Mrs. Jeffrey claims that her legacy should be satisfied out of the other half interest after the payment of debts; and the plaintiff, Mrs. Gatchell, claims the residue of the half interest after debts and the legacy to Mrs. Jeffrey are paid.

These matters are properly before the court on a bill for the construction of the will. *Haseltine* v. *Shepherd*, 99 Me., 495, 445, 59 A., 1025.

The real question to be decided is to whom would this estate have gone had James D. Curtis died intestate. If any part of it would have descended to the kindred of his adopting parents, the claim of his widow to the entire estate falls.

Counsel for the widow argues that the term "kindred" as used in the statute providing for descent and distribution refers only to blood kindred, and the case of *Warren* v. *Prescott*, 84 Me., 483, 24 A., 948, 949, is cited for the proposition as stated in the opinion that "By adoption the adopters can make themselves an heir, but they can not thus make one for their kindred."

But the important point to remember is that adoption is unknown to the common law; it exists solely by virtue of statute. We must accordingly look to the various legislative acts to determine

the rights of the parties affected by the decree of adoption.

The first statute in this state authorizing adoption of children, Pub. Laws 1855, Chap. 189, provided only for the custody and control over the child. Nothing was said as to rights of inheritance. Pub. Laws 1880, Chap. 183, provided that the child should have the right to inherit from his adopting parents unless the decree should otherwise provide. This provision for inheritance was only, however, to apply to adoptions thereafter made. Pub. Laws 1891, Chap. 78, provided that the property of an adopted child dying before reaching the age of twenty-one years unmarried and without issue received by virtue of the adoption should descend the same as if such child were by birth the child of his adopters. This gave to the adopting parents or their heirs a limited right of inheritance in the estate of the child. No further change was made until 1917, when this particular section of the statute relating to adoption was amended by Pub. Laws 1917, Chap. 245, to read as follows:

"By such decree the natural parents are divested of all legal rights in respect to such child, and he is freed from all legal obligations of obedience and maintenance in respect to them; and he is, for the custody of the person and right of obedience and maintenance, to all intents and purposes, the child of his adopters, with right of inheritance when not otherwise expressly provided in the decree of adoption, the same as if born to them in lawful wedlock, except that he shall not inherit property expressly limited to the heirs of the body of the adopters, nor property from their lineal or collateral kindred by right of representation; but he shall not by reason of adoption lose his right to inherit from his natural parents or kindred; and the adoption of a child, made in any other state, according to the laws of that state, shall have the same force and effect in this state, as to inheritance and all other rights and duties as it had in the state where made, in case the person adopting thereafter dies domiciled in this state. If the person adopted died intestate his property acquired by himself or by devise, bequest, gift or otherwise before or after such adoption, from his adopting parents or from the kindred of said adopting parents shall be distributed according to the

provisions of chapter eighty, the same as if born to said adopting parents in lawful wedlock; and property received by devise, bequest, gift or otherwise from his natural parents or kindred shall be distributed according to the provisions of said chapter eighty as if no act of adoption had taken place."

This provision has now been embodied in R. S. 1930, Chap. 80, Sec. 38.

Conceding the force of the argument of counsel for the widow that "kindred" when used in the statute governing the descent of property means "blood kindred," we must still hold that the Legislature, if it so desires, can include other kindred than blood kindred within its scope. This it did in 1880 when it provided that an adopted child should inherit from its adopting parents as if born in lawful wedlock. The case *Warren* v. *Prescott*, supra, in holding that adopters could make themselves an heir but not one for their kindred, was given to the statute then in force its proper limitation.

By the act passed in 1917 the Legislature expressly provided in case of intestacy for the descent of such property as the adopted child might own at his death. Such property as he acquired himself or from his adopting parents or their kindred is to be distributed in accordance with the general statute governing the descent of property as if the child had been born to them in lawful wedlock. It seems perfectly obvious that, if this statute governs this case and James D. Curtis had died intestate, the property here in question which he had acquired from his adopting father would have descended to his uncle and his aunt by adoption as his next of kin.

Counsel for the widow contends, however, that such statute having been passed since the adoption does not control, that it is the act which was in effect at the time of the adoption which determines the rights of the parties.

Such is not the law. The case of *Latham, Appellant,* 124 Me., 120, 126 A., 626, is a direct authority to the contrary. A decree of adoption entered in accordance with power conferred by statute fixes the status of the child; it divests the natural parents of control and establishes the rights and obligations of the foster parents. It does not settle for all time the child's right to inherit property. That remains as in the case of all persons subject to legislative

regulation, until it becomes vested by the death of him whose estate may be subject to administration. The same principle of course applies to the rights of those who may inherit from the child. The rule is well set forth in *Latham, Appellant,* supra, at page 122, in the following language:

"The rights of descent flow from the legal status of the parties, and where the status is fixed, the law supplies the rules of descent, with reference to the situation as it existed at the death of the decedent."

The following authorities support this same general doctrine. *In re Clarence E. Crowell's Estate,* 124 Me., 71, 126 A., 178; *Gilliam* v. *Guaranty Trust Company of New York,* 186 N. Y., 127, 78 N. E., 697; *Sorenson* v. *Rasmussen,* 114 Minn., 324, 131 N. W., 325; *The Brooks Bank & Trust Company* v. *Rorabacher,* 118 Conn., 202, 171 A., 655; 1 Am. Jur., 659; 1 C. J., 1400.

The case of *Simmons, Appellant,* 121 Me., 97, 115 A., 765, is cited by counsel for the widow as authority for the proposition that the right of an adopted child to inherit is determined by the law in force at the time of the adoption. The adoption with which the Court was there concerned was by special legislative act passed in 1864, which provided that the adopted child should inherit from her adopting parents. The case holds that her heirs by blood were not deprived of their right to inherit from her. Counsel assumes, because the decision in this case was handed down in 1922, that the Court ignored the provisions of the act passed in 1917 which provided a different rule for the descent of property of an adopted child dying intestate. The reason that the act of 1917 is not mentioned in the opinion of the Court is because the adopted child, as will appear from the opinion in *Skolfield* v. *Littlefield,* 116 Me., 440, 102 A., 240, died in 1914. The general law then in force as established by Pub. Laws 1891, Chap. 78, and incorporated in R. S. 1903, Chap. 69, Sec. 35, made no provision for inheritance from an adult adopted child in favor of the adopting parents or their heirs. In this respect the provisions of the general law and the special act under which the decedent had been adopted were identical at the time of her death in 1914; and the case properly holds that her heirs should be sought in the family into which she was born rather

than in the family of which she became a part by adoption. The Court had no occasion to consider the effect of a statute on the devolution of the property of a child who had been adopted prior to its enactment.

Had James D. Curtis died intestate, his widow would not have been entitled to all of his estate. By waiving the provisions of his will, one half of the real estate descended to her, two thirds of which interest is not liable for the payment of debts. The other third of her one half interest is subject to the payment of one fourth of the debts and expenses of administration, the other three fourths of which together with the legacy of $2000 to Mrs. Jeffrey are chargeable against the other half interest of the real estate. The balance of such real estate or the proceeds thereof pass under the residuary clause of the will to the plaintiff, Sophia B. Gatchell.

The case is remanded to the sitting Justice for a decree in accordance with this opinion.

*So ordered.*