WHORFF, PETITIONER
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Kennebec.    Opinion, April 8, 1948.

*Harvey D. Eaton,* for Petitioner.

*Ralph W. Farris, Attorney General,*
*Boyd L. Bailey, Assistant Attorney General,* for State of Maine.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MURRAY, JJ.

FELLOWS, J. This case comes to the Law Court from the Probate Court of Kennebec County, on report by agreed statement of facts. It arose by petition in equity commenced under R. S. 1944, Chap. 142, Sec. 30 as amended by Chap. 354 of the P. L. of 1947. The petition asks for partial abatement of inheritance tax determined by the State Tax Assessor.

The facts agreed to were, that the petitioner was born November 12, 1892, and was the illegitimate daughter of the testatrix. The testatrix (mother) named the petitioner (daughter) in her will as the executrix and the sole beneficiary. The mother died July 11, 1947, testate, and the above-mentioned will was proved and allowed in the Probate Court for Kennebec County on October 13, 1947.

It was also agreed that the petitioner on September 25, 1893 had been legally adopted by a man and wife of Gardiner, Maine, apparently not related.

On November 7, 1947 the State Tax Assessor made findings that the amount of the property for distribution in this case was $12,470.39, that the "natural" daughter of decedent was not in statutory Class A but in Class C, that the exemption was $500, that the taxable share of petitioner was $11,970.39, the rate 10%, and the tax $1,197.04. R. S. 1944, Chap. 142, Sec. 5.

The petitioner says that she is a "child" and "lineal descendant" of the testatrix and that the exemption should be $10,000, the taxable share $2,470.39, the rate 2%, and the tax $49.41, as provided by R. S. 1944, Chap. 142, Sec. 3.

In other words, the defendant assessor claims that the petitioner should not be designated as Class A, because she is the *illegitimate* daughter of the testatrix, and that she comes within Class C, requiring the larger tax. See R. S. 1944, Chap. 142, Secs. 2, 3, 4, 5.

Counsel for both parties apparently recognize and assume that although the petitioner was legally adopted in 1893, and her natural mother had been divested of certain rights regarding her, does not affect the child's right to inherit from her natural mother. R. S. 1944, Chap. 145, Sec. 38. The right to inherit is always "subject to legislative regulation." "The law supplies the rules of descent, with reference to the situation as it existed at the death of the decedent." *Gatchell* v. *Curtis*, 134 Me. 302, 307; 186 A. 669, 671; *Latham, Appellant,* 124 Me. 120; 126 A. 626.

The question for decision is, therefore, whether the petitioner, as the natural daughter of the testatrix, is to be treated as a "lineal descendant" and "child," and designated as Class A, under R. S. 1944, Chap. 142, Sec. 3; or whether she is to be considered as not falling in Class A, but in Class C, and taxable in accordance with Chap. 142, Sec. 5.

Chap. 142, Sec. 3, provides:

> "Property which shall so pass to or for the use of the following persons who shall be designated as Class A, to wit: husband, wife, lineal ancestor, lineal descendant, adopted child, stepchild, adoptive parent, wife or widow of a son or husband or widower of a daughter of a decedent, shall be subject to a tax upon the value thereof, in excess of the exemption hereinafter provided, of 2% of such value in excess of said exemption as does not exceed $50,000 . . .; the value exempt from taxation to or for the use of a husband, wife, father, mother, child, adopted child, stepchild, or adoptive parent or grandchild of a deceased child, shall in each case be $10,000, provided however, that if there be more than 1 such grandchild, their total exemption shall, per stirpes, be $10,000; and the value exempt to or for the use of any other person falling within said Class A, to wit: grandparent and other lineal ancestors of remoter degrees, wife or widow of a son, or husband or widower of a daughter of a decedent, grandchild who is the child of a living child, and other lineal descendants of remoter degrees, shall in each case be $500."

Chapter 142, Section 4, provides for Class B designation of collateral relatives, such as brothers, sisters, uncles, aunts, nephews, cousins, and the like.

Chapter 142, Section 5, provides for taxation relative to property which shall pass to or for the use of Class C persons, or persons not being in the two preceding classes.

An examination of the different portions of the foregoing statutes, known as the Inheritance Tax Law, shows that heirs are not necessarily designated as Class A; for the members of Class A are "husband, wife, lineal ancestor, *lineal descendant*, adopted child, stepchild, adoptive parent, wife or widow of a son or husband or widower of a daughter of a decedent;" and the value exempt from taxation "to or for the use of a husband, wife, father, mother, *child*, adopted child, stepchild, or adoptive parent, or grandchild of a deceased child, shall in each case be $10,000." This is a law providing for a tax based on the value of property which shall "pass." It is not a tax on property as such, but is a tax on the privilege of receiving property by will or inheritance. The law contains the graduated principle, and the amount of tax depends on the amount received, or to be received, and whether the recipient is, in some manner, related to the decedent, or is a stranger to the family, or the blood. *McDonald* v. *Stubbs,* 142 Me. 235; 49 Atl. (2nd) 765.

Under the common law, an illegitimate child was not permitted to inherit, or to share in distribution, and such a "natural child" could not transmit by descent except to his, or her, immediate offspring. Such was the law of Maine until 1838. The law, however, has the tendency to break away from such harsh treatment towards the innocent son or daughter, whose fault was the "sins of the father," and the statutes of today, in large measure, tend to mitigate the unreasonable severities of yesterday. *Northrup* v. *Hale,* 76 Me. 306, 313; 49 Am. Rep. 615; *Messer* v. *Jones,* 88 Me. 349; 34 A. 177. *Re Crowell's Estate,* 124 Me. 71; 126 A. 178. It was the purpose of the common law to restrain and control

unlawful cohabitation by making lifetime embarrassments for the children. "It was thought wise to prohibit the offspring from tracing their birth to a source which is deemed criminal by law." *Northrup* v. *Hale*, 76 Me. 306, 313; 49 Am. Rep. 615.

By Chap. 338 of the P. L. of Maine for 1838, approved by the then Governor Kent who was later a justice of this court, it was provided that under certain conditions of acknowledgment an illegitimate child should be considered the heir of the father, and, "in all cases shall be considered as the heir of his mother, and shall inherit * * * * in the same manner as if he had been born in lawful wedlock." This act of 1838 has been, with few minor changes, reenacted in every revision of the statutes. It now reads as follows:

> An illegitimate child born after the 24th day of March, 1864 is the heir of his parents who intermarry. Any such child, born at any time, is the heir of his mother. If the father of an illegitimate child adopts him or her into his family or in writing acknowledges before some justice of the peace or notary public, that he is the father, such child is also the heir of his or her father. In each case such child and its issue shall inherit from its parents respectively, and from their lineal and collateral kindred, and these from such child and its issue the same as if legitimate.
> R. S. 1944, Chap. 156, Sec. 3.

It is true that since the passage of the above statute of 1838, the word "child" in deeds, wills, and contracts has been, in some instances, construed under the facts of the particular case, to have its ancient common law meaning of "legitimate child." "Children" in a deed was construed as meaning that the grantor intended to refer to legitimate children. *Hall* v. *Cressey*, 92 Me. 514; 43 A. 118. "Widow" in a contract meant the legal widow. *Bolton* v. *Bolton*, 73 Me. 299. "Nephew," in a will, was prima facie intended by testatrix to mean legitimate nephew, because "whoever

claims under a will, claims not as heir or by descent, but by purchase." *Lyon* v. *Lyon,* 88 Me. 395, 405; 34 A. 180. It is held, however, that because of the statute an illegitimate child can inherit from the mother's collateral kindred. *Messer* v. *Jones,* 88 Me. 349; 34 A. 177. An illegitimate child can inherit through father's kindred, when father has adopted. *Re Crowell's Estate,* 124 Me. 71; 126 A. 178. An illegitimate child can inherit from his maternal grandfather. *Lawton* v. *Lane,* 92 Me. 170; 42 A. 352.

The will of the testatrix, under consideration here, says: "To my beloved daughter (naming the petitioner) I give, bequeath and devise all my estate of whatever kind and wherever found of which I may be seized or possessed at the time of my decease." It is agreed by the parties that the petitioner to whom the property "passes" is the daughter and child of the testatrix, although, as stated in defendant's answer, she is the "natural" daughter and child.

The defendant tax assessor claims that "child" as used in R. S. 1944, Chap. 142, Sec. 3, has its ancient common law meaning for inheritance tax purposes, and only refers to legitimate child.

Did the lawmaking body when it provided for inheritance taxation at 2% in regard to property which shall pass to a "lineal descendant," and also when it provided, in the same section, for an exemption of $10,000 in the case of a "child," have in mind any child or all children as "lineal descendants"? Did it consider and intend to exclude the natural child, who had been already defined by statute as at all times the heir of the mother and entitled to inherit "the same as if legitimate"? *Messer* v. *Jones,* 88 Me. 349; 34 A. 177, 178.

Before the passage of the law of 1838, now R. S. 1944, Chap. 156, Sec. 3, the illegitimate child was the child of nobody. It was *"nullius filius,"* "the son of no one." Bouvier Law Dictionary. It had no mother recognized by law. It had no father. It could not inherit, and no property could pass to it from an ancestor. It had no ancestor, under the

204

law. At common law "an illegitimate child is not a child."
*Bolton* v. *Bolton*, 73 Me. 299, 311.

The purpose of the Legislature in passing the act of 1838 was to give to the illegitimate child in all instances, a mother. It created something that did not previously exist. It was recognition of the mother of the illegitimate child. It was recognition of the child. It made the child the *heir* of the mother, and by making the child the *heir*, it made *a child* who had not been previously recognized as a child. The child was made *the child* and *the heir*, to whom the mother's property might descend under the general law, because "children" inherit as heirs under the rules of descent. R. S., Chap. 156, Sec. 1. The statute did not pretend to make the illegitimate child legitimate for all purposes. It says "such child and its issue shall inherit * * * * the same as if legitimate." R. S. 1944, Chap. 156, Sec. 3.

When the Legislature passed the Inheritance Tax Statute, R. S. 1944, Chap. 142, Secs. 2, 3, 4, 5, it had the knowledge of its prior statutes and the decisions affecting the status of all children, whether illegitimate or born in lawful wedlock. "The legislative department is supposed to have a consistent design and policy and to intend nothing inconsistent or incongruous." *Cummings* v. *Everett*, 82 Me. 260; 19 A. 456, 457; *Haswell* v. *Walker*, 117 Me. 427, 429; 104 A. 810.

The "consistent design and policy" through the years, since 1838, has been to more fairly treat the innocent illegitimate, and to improve and make easier his unfortunate circumstances of birth. When the Legislature stated in the Inheritance Tax Law, Sec. 3 of Chap. 142, that a "lineal descendant" was in Class A, it necessarily had the intention, in view of the existing legislation, to include the issue of an unmarried mother. "Issue" and "lineal descendant" are synonymous. Webster's New International Dictionary; *Morse* v. *Hayden*, 82 Me. 227, 230; 19 A. 443. The property of this mother, passing to her illegitimate daughter passes "the same as if legitimate," (R. S. 1944, Chap. 156,

Sec. 3) and so passes to her child as "lineal descendant." Any child is a lineal descendant of its mother by the very necessity of the laws of nature, and is by legislative act legally recognized as the lineal descendant, child and heir of the mother.

It is our opinion that when it passed into law the inheritance tax statute (R. S. 1944, Chap. 142, Sec. 3) making the "lineal descendant" subject to a tax of 2% on property received up to $50,000 and making the exemption $10,000 for a "child," the Legislature intended the child and lineal descendant of the unmarried mother as well as the child of the wedded mother.

The cases decided in other jurisdictions are of little or no assistance. While the inheritance tax statutes in other states are similar to ours, the statutes fixing the status of the illegitimate vary greatly. For example, counsel have cited *Bank of Montclair* v. *McCutcheon*, 107 N. J. Eq. 564; 152 A. 379 and also *Commonwealth* v. *Mackey*, 222 Penna. 613; 72 A. 250; 128 A. S. R. 825. The McCutcheon case in New Jersey holds that the word "child," in the transfer tax law, excludes the illegitimate; while the *Mackey* case in Pennsylvania, on the contrary, gives exemption in an estate passing from the mother to her illegitimate. An examination of both these cases, and in fact all the cases that we have seen, show that the decision has depended upon construction of statutes fixing the rights of the child, which statutes are not uniform. See 28 Am. Jur. 102, Par. 195; 61 C. J. 1681, Par. 2532.

The attorney for the defendant State Tax Assessor contends that because the Legislature has named in the Inheritance Tax Law, R. S. 1944, Chap. 142, Sec. 3, "adopted child" and "stepchild" and has omitted to state "illegitimate child," that the illegitimate was not intended as either a "child" or as a "lineal descendant," the *expressio unius est exclusio alterius*, the expression of one is the exclusion of

another. This maxim is well recognized in Maine, as in other states, and might be of force here, as indicating the intention of the lawmaking body, except for the fact that the Legislature had decreed, in other vital existing laws, that property of a mother should pass to the mother's child when it was legitimate, and when it was illegitimate it should pass "the same as if legitimate." That the Legislature named the child who had been "adopted," and the "stepchild," would not of necessity exclude the illegitimate, because there was no occasion to use the word "illegitimate." "Child" in its ordinary and usual meaning, plus the statutory recognition, was sufficient. That "the beneficiary inherited as a child" and should be "taxed as a stranger," as stated by the defendant assessor in his brief, would be most unreasonable, inconsistent, and unjust, if not absurd. Injustice is certainly not to be "overlooked." *Brackett* v. *Chamberlain*, 115 Me. 335, 339, 340; 98 A. 933. We live in a world that boasts of an advanced civilization, and to assume and hold that the Legislature of Maine through an omitted word or phrase—that was not necessary—intended to treat with complete unfairness any innocent unfortunate, is inconceivable. To receive a few extra dollars in a few instances by injustice, and to return to the barbaric ideas of yesterday is to sell right and justice for "a mess of pottage." Whatever may be the attitude of other Legislatures toward the innocent illegitimate, Maine has shown through the years an unremitting effort to ameliorate the existing conditions. The court should not, and does not, insult the knowledge, purpose, and intelligence of a Maine Legislature by holding that by this tax legislation, it intended that only the legitimate child and heir was to be favored in the smaller tax rate. We cannot agree with the State's Attorney that this child, entitled to receive from her mother as "child," "heir" and "lineal descendant," is not entitled to so receive "for purposes of taxation."

In this case, and under this will, the property here passes within the meaning of R. S. 1944, Chap. 142, Sec. 3, to a

child and lineal descendant. The petitioner is therefore to be designated as in Class A, and subject to the lowest rate of tax with the highest exemption.

*Case remanded to Probate Court for further proceeding in accordance with this opinion.*