CAROLINE G. WYMAN, APLT.

FROM DECREE OF JUDGE OF PROBATE

ESTATE OF CHARLES HINDS GOODWIN

Androscoggin.　January 24, 1952.

*Clifford & Clifford,* for appellant.

*George R. Grua,* for appellee.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J. On exceptions from the Superior Court of Androscoggin County sitting as the Supreme Court of Probate.

From the bill of exceptions and the agreed statement of facts it appears that Caroline G. Wyman, the appellant, was legally adopted by the natural father and mother of Charles Hinds Goodwin, deceased, in the Commonwealth of Massachusetts in 1887; that at the time of said adoption the adoptive parents were legal residents of and domiciled in said Massachusetts; that after said adoption the deceased (Charles Hinds Goodwin) was born to the foster parents (of Caroline G. Wyman) and at the time of their death the said foster parents were residents of and domiciled in the town of Livermore Falls in the State of Maine. The said deceased (Charles Hinds Goodwin) died intestate on October 12, 1948, in said Livermore Falls leaving a widow, no children, the said Caroline G. Wyman (sister by adoption), and four cousins. It also appears from the record that in the orderly administration of the Estate of Charles Hinds Goodwin a petition for distribution was filed in the Probate Court for Androscoggin County and on said petition for distribution the Probate Court ruled that the Estate should be distributed one-half to the widow and one-eighth to each of the four cousins. From this decision the said Caroline G.

Wyman (adoptive sister) duly appealed to the Superior Court for Androscoggin County, sitting as the Supreme Court of Probate, which ruled that the distribution ordered by the Judge of Probate was correct. From this ruling exceptions were taken and brought forward to this court.

The real question and the only question for the determination of this court is whether or not the said appellant is entitled to inherit under the laws of descent or distribution one-half of the estate of said Charles Hinds Goodwin as an heir at law of her brother by adoption. This question involves and turns upon the proper construction of the language of Sec. 38, Chap. 145, R. S., 1944, hereinafter set forth relating to the legal effect of adoption. Adoption has been defined as "a judicial act creating between two persons certain relations, purely civil, of paternity and affiliation." *Black's Law Dictionary, Third Edition; Bouvier's Law Dictionary, Rawle's Third Edition. Restatement of the Law of Conflict of Laws*, Sec. 142, under Adoption, contains the following comment:

> "a. Adoption is the relation of parent and child created by law between persons who are not in fact parent and child."

Under Sec. 143, Comment a, we find the following:

> "The status of adoption is not created by the common law of England or of the states of the United States, nor does that law give it any legal effect. Unless there is in the state a statute providing for adoption, no effect will be given in England or a state of the United States to the status of adoption as such."

From the last quotation it will be seen that at common law the appellant would have no claim of inheritance in the estate of her adoptive brother, Charles Hinds Goodwin, deceased. Therefore, if she is entitled to rights of inheritance they must originate by virtue of a statute authorizing the

same. See *Gatchell and Jefferey* v. *Curtis and Given,* 134 Me. 302, 186 A. 669, wherein we said:

"But the important point to remember is that adoption is unknown to the common law; it exists solely by virtue of statute. We must accordingly look to the various legislative acts to determine the rights of the parties affected by the decree of adoption."

Sec. 38, Chap. 145, R. S., 1944, reads as follows:

"**Sec. 38. Legal effect of adoption of child; descent of property.** R. S. c. 80, § 38. By such decree the natural parents are divested of all legal rights in respect to such child, and he is freed from all legal obligations of obedience and maintenance in respect to them; and he is, for the custody of the person and right of obedience and mainte- nance, to all intents and purposes, the child of his adopters, with right of inheritance when not otherwise expressly provided in the decree of adoption, the same as if born to them in lawful wedlock, except that he shall not inherit property expressly limited to the heirs of the body of the adopters, nor property from their lineal or col- lateral kindred by right of representation; but he shall not by reason of adoption lose his right to inherit from his natural parents or kindred; *and the adoption of a child made in any other state, according to the laws of that state, shall have the same force and effect in this state, as to inherit- ance and all other rights and duties as it had in the state where made, in case the person adopting thereafter dies domiciled in this state.* If the per- son adopted dies intestate, his property acquired by himself or by devise, bequest, gift, or otherwise before or after such adoption from his adopting parents or from the kindred of said adopting par- ents shall be distributed according to the pro- visions of chapter 156, the same as if born to said adopting parents in lawful wedlock; and property received by devise, bequest, gift, or otherwise from his natural parents or kindred shall be distributed

according to the provisions of said chapter 156 as if no act of adoption had taken place." (underscoring ours)

It will be noted that this statute makes reference to two classes of adoptions. One may be termed the domestic or local adoption made under the laws of the State of Maine. The other, an adoption made outside the State of Maine. Our court has on several occasions interpreted certain phases of local adoptions made under the laws of the State of Maine. See *Warren* v. *Prescott*, 84 Me. 483, 24 A. 948, which settled the proposition that by adoption the adopters could make themselves an heir but they cannot thus make one for their kindred. See also *Gatchell et al.* v. *Curtis et al., supra,* which case historically reviews the statutes and amendments of this state with respect to local adoptions. See also the case of Latham, Appellant, 124 Me. 120, 126 A. 626, which holds that a decree of local adoption entered in accordance with power conferred by statute fixes the status of the child; it does not settle for all time the child's right to inherit property. That remains as in the case of all persons subject to legislative regulation, until it becomes vested by the death of him whose estate may be subject to administration. Our court said in *Gatchell et al.* v. *Curtis et al.,* supra, quoting from Latham, Appellant, *supra:*

"The rights of descent flow from the legal status of the parties, and where the status is fixed, the law supplies the rules of descent, with reference to the situation as it existed at the death of the decedent."

So far as we are aware there has been no construction of that part of our adoption statute, *supra,* which reads as follows:

"*And the adoption of a child made in any other state, according to the laws of that state, shall have the same force and effect in this state as to inheritance and all other rights and duties as it had in the state where made in case the person adopting thereafter dies domiciled in this state.*"

This section of the statute apparently was passed by the Legislature in an attempt to clarify the matter of foreign adoption before mentioned. That is, adoptions legally made outside of the State of Maine and in accordance with the law of the particular state or territory where the adoption took place. The instant case is such a situation, but it should be borne in mind that we are now speaking *not of the rights of descent or inheritance* from the adopters but are concerned solely with the question of whether or not an adoptive sister, the appellant in this case, can under our laws of descent or inheritance legally succeed to any interest in the property of the appellant's adoptive brother who was a natural child of the adopters.

We have heretofore pointed out the relationship of parent and child created by adoption and Restatement of the Law of Conflict of Laws, Sec. 143, states:

> "The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter estate to the status of adoption when created by its own law."

There is, however, considerable difference between the status of adoption, that is, the relationship of parent and child, and the right or capacity of the adopted child to inherit because under our decisions the right of inheritance applicable to local adoptions does not arise until the death of a decedent while the status of adoption becomes effective at the date of the decree of adoption. See *Appeal of Latham, supra.* In 73 A. L. R. 964 under the Annotation entitled Conflict of Laws As to Adoption as Affecting Descent and Distribution of Decedent's Estate, and in 154 A. L. R. 1179 under the same title, and in the Annotation in 18 A. L. R. (2nd) 960 under the title What Law, in Point of Time, Governs as to Inheritance from or through Adoptive Parent will be found many cases wherein the views of various courts of last resort of the United States are set

forth and commented upon. Some courts take the view that the law creating the status of adoption is controlling. Others take the view that the law of the place where the property is situated or the law of decedent's domicile controls extent or fact of right of inheritance when in conflict with law creating the status. It does not seem to us that anything would be gained by citing these authorities or considering them in detail, but it seems to be the general rule that usually the status acquired by adoption in one state will be recognized in another and the right of the child to inherit will be given effect as to property located in the latter state and that right to inherit in a state other than that of his adoption will be determined by the law of the state creating the adoption, but it is only the adoption status with its incidental rights, if any, as to inheritance that will follow him to and be recognized in the state where the property is located or situated entitling him to inherit it if and to the extent that the law of the latter state allows a child there adopted to inherit; but the question whether an adopted child (irrespective of where he is adopted) can inherit and the extent of such right of inheritance, will be determined, not by the law of the state where the adoption took place, but by the law of the state where the property is located, or by the law of the domicile of the decedent, as the case may be, so that the fact that an adopted child can inherit under the law of the state of his adoption will not enable a child adopted in one state to inherit property in another state, under the laws of which an adopted child, even if adopted in the state, cannot inherit or can inherit only to a limited extent.

1 Am. Jur. Sec. 63, Page 662, states:

> "The right of an adopted child to inherit as an heir of the relatives or descendants of the adoptive parents depends entirely upon statutory or constitutional provisions. And while these statutes, though similar, have not received a uniform construction, yet it is the general view that there is

not conferred upon the child a right to inherit from the lineal or collateral kindred of the adoptive parent unless the language of the statutes is clearly to that effect.

- - - - - - - - - - - -

"Adoption statutes, as well as matters of procedure leading up to adoption, should be liberally construed to carry out the beneficent purposes of the adoption institution and to protect the adopted child in the rights and privileges coming to it as a result of the adoption. But it does not follow that an adoption statute should be liberally construed to divert from its natural course the descent of property left by those who are not parties to the adoption proceedings. Consanguinity is so fundamental in statutes of descents and distributions that it may only be ignored by construction when courts are forced so to do either by the terms of express statute or by inexorable implication. To prescribe a course of descent which will take property of deceased persons out of the current of their blood, the legislature must use explicit and unmistakable language."

An examination of the statute in question, namely, Sec. 38, discloses that domestic or local adopted children do not take from lineal or collateral kindred of the adoptive parents by right of representation, in fact, adopted children are specifically denied that right. It therefore follows that if the Legislature had intended to make any exception to a foreign adoption, it should have added explicit words to that effect. It appears to this court that the Legislature by the adoption act simply intended to say that if the foreign law of adoption gave the adopted child capacity to inherit from its adoptive parents the State of Maine would give a like right of inheritance from the adoptive parents provided such adoptive parents died domiciled in Maine. In other words, it is our opinion that that language referring to the person adopting dying domiciled in this state has no bearing on the question before us which is as we have stated before, whether or not the appellant, the adoptive sister of the de-

cedent, is entitled to inherit from her adoptive brother. As we said above, if the adoption of the appellant had taken place under the laws of the State of Maine, she clearly would not have been entitled to receive anything from her adoptive brother's estate.

It is a well known fact that distribution of personal property in this state is governed by the rules of descent in force in this state at the date of death of the decedent (See Appeal of Latham, *supra*) and we are unable to gather any legislative intent from the language used in said Section 38 which in any way would permit a foreign adoptee to take a greater share in a decedent's estate than a domestic or local adoption and we have before pointed out that the appellant, had she been legally adopted under the laws of Maine, would have been specifically excluded from taking any property from her adoptive brother. Thus we cannot believe that the appellant in this case is entitled to share in the estate of her adoptive brother. If the Legislature had intended such a course of descent which would take property of deceased persons out of the current of their blood, the Legislature should have used explicit and unmistakable language.

It should be noted that while this opinion deals with Section 38, Chap. 145, R. S., 1944, said section was amended by Chap. 81 of the Public Laws of Maine, 1951, effective August 20, 1951, and this opinion is not to be construed as in any manner reflecting the ideas of this court as to the legal effect of said amendments nor do we express or intimate any opinion thereon.

The mandate will be

*Exceptions overruled.*
*Case remanded.*