Roger N. WOODCOCK et al.

v.

Hadley P. ATLASS et al.

Supreme Judicial Court of Maine.

Nov. 3, 1978.

Harry N. Starbranch (orally), Nancy J. Spieczny, Augusta, for plaintiffs.

John M. R. Paterson, Deputy Atty. Gen. (orally), Augusta, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The five plaintiffs,[1] all former "classified professional" employees of the Maine Department of Commerce and Industry (hereinafter "DCI"), appeal from an order of the Superior Court upholding the decision of the State Employees Appeals Board denying plaintiffs' action for reinstatement as employees of the State Development Office (hereinafter "SDO"). In June 1975, following a major statutory reorganization which abolished DCI and created SDO, plaintiffs were laid off. The letters informing them of their dismissal stated:

> "We have checked in the Personnel Department and found that you do not have previous experience in any position in the Department [of Commerce and Industry] which is being transferred to another State organization where you could exercise your seniority in lieu of being placed on layoff."

Plaintiffs claim that the same legislation (P.L.1975, ch. 481) which empowered the Governor to refocus the State's development efforts in response to the then "current economic crisis" also mandated their automatic transfer to the SDO, newly created by the same 1975 statute.[2] Both the Appeals Board and the Superior Court rejected plaintiffs' interpretation of P.L.1975, ch. 481. We find no error of law in their decisions.

We deny the appeal.

■ Public Laws 1975, ch. 481, entitled "An Act to Reassign the Functions of the Department of Commerce and Industry," abolished DCI and transferred most of its functions to the State Planning Office and SDO. Plaintiffs base their claim for automatic reinstatement in SDO[3] on section 6 of that 1975 legislation. Section 6 provides in full:

> "Transitional; employees. The classified employees of the Department of Com-

1. In addition to Roger N. Woodcock, the plaintiffs in this action are Waldo E. Pray, Robert B. Hawkins, Randall A. Parr, and George P. Adams.

2. The dispute between these parties has previously been before the Law Court. In July 1975 the plaintiffs sought in the Superior Court a declaratory judgment that their layoff was inconsistent with section 6 of P.L.1975, ch. 481. The Superior Court dismissed the action, and this court affirmed, on the ground that the issue was one that by statute had to be initially submitted to the State Employees Appeals Board. *Woodcock v. Atlass*, Me., 359 A.2d 69 (1976).

3. Though paragraph 10 of the plaintiffs' complaint speaks in terms of a right of transfer to either the State Development Office or the State Planning Office, it named as defendants only the director of the State Development Office, Hadley P. Atlass, and the State Employees Appeals Board. The case has been tried on the basis of plaintiffs' claim of entitlement to be transferred to the State Development Office.

merce and Industry whose job classifications will be maintained as classified positions in the State Planning Office or the State Development Office shall be transferred to said offices in accordance with this Act, without loss of accrued sick leave or other benefits. *Classified professional employees of the Department of Commerce and Industry shall be transferred to jobs consistent with their skills and seniority, either in the State Planning Office or the State Development Office.* Notwithstanding the provisions of this Act, classified professional employees *so transferred* shall retain their classified status unless they voluntarily relinquish it and shall be transferred without loss of accrued sick leave, vacation pay or other benefits. The provisions of this Act relating to professional employees shall apply only to professional employees hired for other positions or to professional employees hired in the future to replace any transferred classified professional employee when he leaves his position." (Emphasis added)[4]

Plaintiffs argue that the second sentence of section 6 directs that classified professional employees, such as they, "shall be transferred" to SDO regardless of whether the new department has any jobs available for which they, by seniority and skill, are qualified. Their argument, in short, is that section 6 guarantees them jobs after the abolition of DCI and the reorganization of the State's development efforts. We cannot agree. The second sentence of section 6 conditions its application on a finding that the skills of the former classified professional employees can be utilized by SDO. It provides that the plaintiffs shall be transferred to jobs "consistent with their skills and seniority." If no such positions exist,

no transfer is mandated. This construction of the second sentence of section 6 is buttressed by the third sentence which states that employees "so transferred" may retain their classified status, implying that some classified professional employees may not be transferred.

Indeed, requiring automatic transfer of the plaintiffs would have thwarted the administrative framework specifically designed by the legislature to combat the State's "economic crisis." The legislature passed P.L.1975, ch. 481, which abolished DCI and transferred its functions to the Planning Office and SDO, in response to a perceived urgent need to "formulate emergency and long-range plans and policies for providing new industrial development and additional jobs to meet the needs of the people of Maine." Emergency Preamble to P.L.1975, ch. 481. Recognizing that "the attraction and expansion of industrial development can best be accomplished under the direct supervision of the Governor," *ibid.*, the legislature placed the SDO in the Executive Department and made the new office directly responsible to the Governor. The act vested the Governor with the power to appoint the director of SDO, subject to the approval of the then Executive Council. The director was given a term coterminous with the Governor's, subject to removal for cause by the Governor. P.L.1975, ch. 481, § 3.[5]

Pursuant to this firm legislative mandate, the Governor appointed Hadley P. Atlass as acting director of SDO. Exercising his express authority under the newly enacted 5 M.R.S.A. § 7002(2)(A) to "[a]ppoint and remove the staff of the office and prescribe their duties as may be necessary to implement the purposes" of P.L.1975, ch. 481,[6]

---

**4.** This transitional section was later repealed by P.L.1975, ch. 777, § 15, eff. May 3, 1976.

**5.** This section was amended to provide that the "director shall hold office during the pleasure of the Governor." P.L.1975, ch. 771, § 92, codified at 5 M.R.S.A. § 7002(1) (Supp.1978).

**6.** P.L.1975, ch. 481 considerably expanded the SDO director's authority to hire and fire em-

ployees. Whereas the authority of the commissioner of the former DCI to employ "industrial development specialists and such other employees as may be necessary" was expressly made "subject to the Personnel Law," 10 M.R.S.A. § 402 (1964), P.L.1975, ch. 481, which repealed 10 M.R.S.A. § 402 and created the SDO, expressly provides that the positions formerly occupied by classified professional employees subject to the Personnel Law are to be

Mr. Atlass notified the five plaintiffs that they would not be transferred to the new department. Mr. Atlass testified before the State Employees Appeals Board that the lay-offs reflected budgetary constraints imposed by the legislature and a change in priorities:

"[A]s the statute was written and eventually amended and eventually was passed, it became evident that, A, we could not afford to maintain the kind of Department we had in the past and, B, that certain functions were moved out of our criteria, Research is an example, was taken out of our jurisdiction and put in the State Planning Office. There was not going to be any Promotion. There was not going to be any Publicity. Therefore, that function was dissolved, including the Printing, and all that went with it. It became evident that we would be whittled down to a Department focusing very largely on Industrial Development, with a small overage on Marketing and Foreign Trade."

Three of the plaintiffs, Messrs. Woodcock, Hawkins, and Pray, had been previously involved in the activity of promotion, a function that had been discontinued in the new SDO. Plaintiff Adams had previously acted as a development representative in DCI, a function still served by SDO; but he testified that he had no reason to believe that he had more seniority than the development representatives actually transferred. Plaintiff Parr, also classified as a development representative, did not testify.

In short, the reorganization act vested unprecedented authority in the Governor, acting through the director of SDO, to direct the development efforts of the State within strict budgetary constraints. The acting director, having determined that the SDO budget was far smaller than the previous DCI budget and would support a staff

of only 9, not 31 as plaintiffs contend, eliminated the promotion function and laid off employees qualified in promotion and other former employees of DCI who lacked sufficient seniority to retain development jobs. A statutory requirement of the automatic transfer of plaintiffs, regardless of budgetary constraints or the relevance of their skills to the changed priorities of SDO, would have undermined the very improvement of Maine's development efforts that the reorganization was designed to produce. In the absence of clear legislative directive to the contrary, we will not interpret the language of section 6 to support the position urged by the plaintiffs. We must presume that the legislature did not intend inconsistent or unreasonable results. *State v. Larrabee*, 156 Me. 115, 161 A.2d 855 (1960); *Whorff v. Johnson*, 143 Me. 198, 58 A.2d 553 (1948); *S. D. Warren Co. v. Inhabitants of Town of Gorham*, 138 Me. 294, 25 A.2d 471 (1942).

In attempted confirmation of their interpretation of section 6, plaintiffs point to the "Statement of Facts" appended to the amendment which added what became section 6 of chapter 481, in which the Joint Legislative Committee on State Government observed that the amendment "provides for maximum employee protection for those employees wishing to be transferred to this new agency." Committee Amendment "A" to L.D.1456 (1975). Plaintiffs contend that "maximum protection" means a guaranteed job for all former "classified professional" employees of DCI. We cannot agree.

The third sentence of section 6 provides that "classified professional employees so transferred shall retain their classified status unless they voluntarily relinquish it and shall be transferred without loss of accrued sick leave, vacation pay or other benefits." Coupled with the second sentence of section

---

filled by unclassified employees. P.L.1975, ch. 481, § 3, codified as 5 M.R.S.A. § 7002 (Supp. 1978). Thus, P.L.1975, § 481 authorized the director of SDO to make employment decisions regarding employees in positions formerly occupied by classified professional employees relatively unimpeded by externally imposed regu-

lations and strictures. Mandatory, automatic transfer of all DCI professional employees into classified positions in the newly created SDO would run counter to the plain overall personnel objective of P.L.1975, ch. 481, and can be found only if required by clear language of section 6.

6, which dictates transfers to positions in SDO provided that jobs consistent with their skills and seniority are available, these statutory provisions place former DCI professional classified employees in a favored position in two respects. First, if jobs commensurate with their talents are available in SDO, former DCI employees stand at the head of the employment line. If a need for their skills exists, they are favored against the ranks of other professionals who had not served previously as DCI employees. Second, once transferred to SDO, former DCI employees cannot be demoted in status, have their pay reduced, or have other employment privileges withdrawn. If they are transferred, they are guaranteed conditions of employment at least as favorable as those they previously enjoyed at DCI. The committee's observation that the amendment "provides for maximum employee protection" relates to those benefits, not to guaranteed jobs.

If the legislature had intended to guarantee employment for all classified professional employees in either the State Planning Office or SDO, it could have done so unambiguously. For example, in creating the Department of Business Regulation, the legislature provided for the mandatory retention of existing personnel in the following clear language: "All employees and officials of the departments, bureaus, commissions or boards referred to in this Act are, on the effective date of this Act, transferred to the Department of Business Regulation and shall continue in their employment or office after such effective date, without interruption of state service, unless such employment or office is terminated or abolished." P.L.1973, ch. 585, § 13.

█ We must conclude that section 6 of chapter 481 mandates transfer of plaintiffs to SDO only if jobs "consistent with their skills and seniority" exist in the newly created office. In denying plaintiffs' action for reinstatement, the State Employees Ap-

peals Board expressly found that "no job classifications were maintained in the State Planning Office or the State Development Office which were consistent with the job skills presented by the grievants . . .." [7] Ample evidence supported the Board's findings of fact, and we do not understand that plaintiffs contest any of those findings on appeal.

The entry must be:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

---

7. The Appeals Board decision refers to the absence of "job classifications." The second sentence of section 6, in contrast, refers to the existence of "jobs." We attach no significance to the Appeals Board's choice of words. From the record it is clear that no jobs were available for which the plaintiffs' skills were required. We read the Appeals Board decision as making reference to that fact.