Marie TIEMANN

v.

**SANTARELLI ENTERPRISES, INC.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1984.
Decided Dec. 31, 1984.

Kim M. Vandermeulen (orally), Downeast Law Offices, P.A., Augusta, for plaintiff.

Farris & Susi, Gregory J. Farris (orally), Gardiner, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

After a trial before a single justice in the Superior Court, Kennebec County, the court ordered judgment in favor of the defendant on the plaintiff's claim that her discharge by the defendant constituted unlawful employment discrimination. The plaintiff appeals, alleging that several errors in the proceeding below require reversal of the Superior Court's decision. The plaintiff's first two contentions concern evidentiary rulings by the presiding justice; the plaintiff argues that the trial court committed prejudicial error by excluding, first, the testimony of a witness for the plaintiff and, second, a report prepared by that same witness. The plaintiff next contends that the presiding justice erred as a matter of law in determining that the defendant demonstrated a legitimate, nondiscriminatory basis for discharging the plaintiff. Finally, the plaintiff asserts that the presiding justice erred as a matter of law by not making findings concerning whether the legitimate reasons proffered by the defendant for discharging the plaintiff were a mere pretext for a discriminatory motivation. We find no error in the decision of the Superior Court and deny the appeal.

In June of 1980 the plaintiff, Marie Tiemann, began working as a waitress at Guido's Wine Cellar ("Guido's"), an Augusta restaurant owned by the defendant, Santarelli Enterprises, Inc. In November of 1980 the plaintiff learned that she was pregnant and that her expected delivery date was July 12, 1981. In late November or early December of 1980 the plaintiff notified Bruce Fifield, the manager of Guido's, and Guido Santarelli, the owner of Santarelli Enterprises, Inc., that she was pregnant. In early February of 1981 there was some discussion between the plaintiff and Bruce Fifield concerning how long the plaintiff

would continue working at Guido's in light of her pregnancy. According to Mr. Fifield's trial testimony, the plaintiff said she planned to leave at the end of the month.[1]

Later in February of 1981 the management of Guido's decided to lay off the plaintiff by the beginning of March. When the plaintiff learned of this, she asked Mr. Fifield and Mr. Santarelli to allow her to continue working a longer time. Despite her request, the defendant laid off the plaintiff around March 1, 1981. According to the management of Guido's, the discharge of a waitress was necessary at that time because of a reduction in the volume of business at the restaurant; the plaintiff was selected because of poor work performance and her stated intention to continue working at Guido's only until the end of February.

The plaintiff, however, contended that the defendant terminated her employment because she was pregnant, in violation of Maine's Fair Employment Law, 5 M.R.S.A. § 4572–A(2) (Supp.1984).[2] On April 7, 1981 the plaintiff filed a complaint against Santarelli Enterprises, Inc. with the Maine Human Rights Commission (the "Commission"). After an unsuccessful attempt to promote an informal settlement and investigation of the claim, the Commission found reasonable grounds to believe that unlawful discrimination had occurred. The Commission then advised the plaintiff of her right to file a civil action against her former employer pursuant to 5 M.R.S.A. § 4621 (Supp.1984).

Consequently, the plaintiff filed this action against the defendant in the Superior Court, Kennebec County. At the trial before a single justice, the plaintiff offered testimony by Diane Bennekamper, the Commission investigator who handled the plaintiff's complaint, concerning statements made by Bruce Fifield at a conference held by the Commission prior to its determination that there were reasonable grounds for the plaintiff's complaint. The plaintiff also sought to introduce a copy of a report filed by Ms. Bennekamper after she completed her investigation of the plaintiff's complaint. The presiding justice excluded both the testimony and the report based on 5 M.R.S.A. § 4612(1) (Supp.1984).[3] The presiding justice subsequently found that the plaintiff's discharge was not the result of unlawful discrimination and ordered judgment in favor of the defendant.

1. According to the plaintiff's testimony, she told Mr. Fifield that she would work *at least* through the end of February and that she would give adequate notice when she had definite plans to leave.

2. Section 4572–A(2) provides:

It shall be unlawful employment discrimination in violation of this Act, except where based on a bona fide occupational qualification, for an employer, employment agency or labor organization to treat a pregnant woman who is able to work in a different manner from other persons who are able to work.

3. Section 4612(1) provides:

**Predetermination resolution; investigation.** Upon receipt of such a complaint, the commission or its delegated single commissioner or investigator shall endeavor to resolve the matter by informal means prior to a determination of whether there are reasonable grounds to believe that unlawful discrimination has occurred. *Nothing said or done as part of those endeavors* nor the final agreement *may be* made public without the written consent of the parties to the proceeding nor *used as evidence in any subsequent proceeding, civil or criminal,* except in a civil action filed by a party alleging a breach of agreement. The commission or its delegated commissioner or investigator shall conduct such preliminary investigation as it deems necessary to determine whether there are reasonable grounds to believe that unlawful discrimination has occurred. In conducting an investigation, the commission, or its designated representative, shall have access at all reasonable times to premises, records, documents, individuals and other evidence or possible sources of evidence and may examine, record and copy those materials and take and record the testimony or statements of such persons as are reasonably necessary for the furtherance of the investigation. The commission may issue subpoenas to compel access to or production of those materials or the appearance of those persons, subject to section 4566, subsections 4–A and 4–B, and may serve interrogatories on a respondent to the same extent as interrogatories served in aid of a civil action in the Superior Court. The commission may administer oaths.

## I.

The action that the Commission may take upon an allegation of unlawful discrimination is governed by 5 M.R.S.A. §§ 4611–14 (1979 & Supp.1984). Upon receiving a complaint, the Commission "shall endeavor" to resolve the matter informally before making a determination of whether there are reasonable grounds to proceed upon that complaint. 5 M.R.S.A. § 4612(1) (Supp. 1984).[4] Under the confidentiality provision in the statute, "[n]othing said or done as part of those endeavors ... may be ... used in any subsequent proceeding, civil or criminal...." *Id.* In determining whether there are reasonable grounds to believe that unlawful discrimination has occurred, the Commission "shall conduct such preliminary investigation as it deems necessary...." *Id.* This investigation may include "fact-finding meetings and interviews with the complainant, the respondent, and any other persons whose statement may provide a source of evidence." Me.Hum. Rights Comm. Rule 2.05 (October 16, 1978).

At trial the plaintiff offered as evidence the testimony of Diane Bennekamper. The critical portion of this testimony concerned a statement allegedly made by Bruce Fifield during a conference held by the Commission prior to its determination of whether grounds existed in support of the plaintiff's complaint.[5] The trial court excluded the testimony, ruling that it was inadmissible under the confidentiality provision in 5 M.R.S.A. § 4612(1) (Supp.1984).

On appeal, the plaintiff argues that section 4612(1) only requires the exclusion of statements made during an actual attempt to informally settle the complaint. The plaintiff contends that the confidentiality provision of section 4612(1) does not apply to statements made during the preliminary investigation aimed at determining whether there are reasonable grounds to believe that unlawful discrimination has occurred.[6] The plaintiff asserts that, in this case, at the time Bruce Fifield made the statement in question, Ms. Bennekamper had clearly proceeded beyond "endeavor[ing]" to informally resolve the matter and had entered a purely investigative stage consisting of a fact-finding conference. Accordingly, the plaintiff argues, the trial court erred by excluding this evidence under the confidentiality provision of 5 M.R.S.A. § 4612(1) (Supp.1984).[7]

■ This Court has not previously addressed the issue of whether any period exists during an investigation into allegations of unlawful discrimination by the Commission when things said or done in response to that investigation are not pro-

---

4. The text of section 4612(1) appears *supra* at note 3.

5. The presiding justice listened to Ms. Bennekamper's testimony as an offer of proof. *See* M.R.Evid. 103(a)(2). She testified that Bruce Fifield, when questioned why he did not rehire the plaintiff when a vacancy arose shortly after her discharge, stated, "because there she was with her belly out to there and it would be difficult for her to carry trays and that [Fifield] didn't want to be liable for any injury that might result if she fell." At trial Mr. Fifield denied ever making such a statement.

6. If the Commission finds reasonable grounds to believe that unlawful discrimination has occurred, a separate provision of section 4612 again requires it to "endeavor" to resolve the complaint through informal settlement. 5 M.R.S.A. § 4612(3) (1979). Section 4612(3) also has a confidentiality provision similar to the one contained in section 4612(1).

The interpretation of section 4612 urged by the plaintiff is essentially that there are two periods of required informal settlement negotiations, one before the reasonable grounds determination, under section 4612(1), and one immediately after it, under section 4612(3), and that in between these two periods investigation by the Commission may proceed with no concurrent attempt to resolve the matter informally. According to the plaintiff, the confidentiality provision in section 4612(1) does not protect statements made during an investigative period when the parties are not pursuing any informal resolution of the matter. As we note *infra*, on the facts of this case we do not decide whether we agree with such a construction of section 4612.

7. The plaintiff contends that if the evidence in question is not excluded under section 4612(1) it is admissible non-hearsay under M.R.Evid. 801(d)(2) as an admission by a party-opponent.

tected by the confidentiality provision in 5 M.R.S.A. § 4612(1) (Supp.1984). The facts of this case, however, do not require us to answer that question. Even if we were to adopt the interpretation of section 4612 urged by the plaintiff,[8] the record does not support the plaintiff's contention that Ms. Bennekamper had clearly ended informal settlement discussions and had commenced pure investigation of the complaint. The conference at which Mr. Fifield allegedly made the statement in question, while certainly directed at fact-finding, began with a request from Ms. Bennekamper for settlement proposals from the parties. There is no evidence demonstrating that she ever informed the parties that they were moving from informal settlement negotiations into pure investigation or, more importantly, that their statements would no longer be confidential. Based on this evidence, the presiding justice found as a matter of fact that the Commission investigator had not terminated the "endeavors" to resolve the complaint informally at the time Mr. Fifield allegedly made the statement in question. Because we cannot say that this finding is clearly erroneous, we hold that the justice properly excluded Ms. Bennekamper's testimony concerning that statement under 5 M.R.S.A. § 4612(1) (Supp.1984).

## II.

The plaintiff also offered as evidence a report compiled by Ms. Bennekamper during her investigation of the plaintiff's complaint. At trial, the plaintiff argued that this investigative report was admissible under the public records exception to the hearsay rule codified in M.R.Evid. 803(8). The presiding justice excluded this report along with the testimony of Ms. Bennekamper without expressly addressing the grounds for excluding the report. The

8. *See supra* note 6.

9. We also observe that a substantial portion of the Commission's report consists of the opinions and conclusions of the investigator who compiled it based upon her exercise of judgment and discretion. Such portions, because they consist of opinions and conclusions rather than

plaintiff, citing federal case law concerning the admissibility of investigative reports compiled by the Equal Employment Opportunity Commission (the "E.E.O.C."), contends that the exclusion of the report was error.

The federal decisions regarding the admissibility of E.E.O.C. files have not been uniform. *See* Note, *The Use of EEOC Investigative Files in Title VII Actions,* 61 B.U.L.Rev. 1245, 1245–46 (1981) [hereinafter cited as Note, *EEOC Investigative Files* ]. As the plaintiff notes, however, there is authority supporting the admission of such files to some extent pursuant to the federal public records exception to the hearsay rule, specifically Fed.R.Evid. 803(8)(C). *See Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976); Note, *EEOC Investigative Files* at 1262–66. By analogy, the plaintiff contends that the Commission's report in this case should be admitted under the Maine public records exception to the hearsay rule, M.R.Evid. 803(8).

■■■■■ The public records exception to the hearsay rule in Maine differs markedly from its federal counterpart. *Compare* M.R.Evid. 803(8) *with* Fed.R.Evid. 803(8). The Maine rule, unlike the federal rule, removes from the public records hearsay exception "factual findings resulting from special investigation of a particular complaint, case or incident." M.R.Evid. 803(8)(B)(iv). Accordingly, we reject the plaintiff's contention that an investigative report such as the one in this case, which a Commission investigator prepared directly in response to the plaintiff's "particular complaint," is admissible hearsay under M.R.Evid. 803(8).[9] The federal cases cited

factual findings, are clearly inadmissible hearsay irrespective of the effect of M.R.Evid. 803(8)(B)(iv). *See State v. Chase,* 330 A.2d 909, 912 (Me.1975); *Knox Lime Company v. State Highway Com'n,* 230 A.2d 814, 820 (1967); Field & Murray, *Maine Evidence* § 803.8 (1976 & Supp.1980).

by the plaintiff, decided under Fed.R.Evid. 803(8)(C), are inapposite.

■■■ The plaintiff also contends that the defendant failed to raise the hearsay objection at trial and is barred from doing so now. An objection is required, however, only when "the ruling is one admitting evidence." M.R.Evid. 103(a)(1). Because the trial court had already excluded the report, the defendant had no occasion to raise the hearsay objection. *See* M.R. Civ.P. 46. Moreover, where evidence is excluded at trial there is no reversible error provided that *some* ground exists for its exclusion, even though the trial court did not rely on that particular ground in making its ruling. *See* Field & Murray, *Maine Evidence* § 103.2 at 5 (1976). Accordingly, we uphold the presiding justice's exclusion of the Commissioner's report.

### III.

■■■ According to the framework established in *Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253, 1262–63 (Me.1979) ("*Auburn I*"), Maine law recognizes three theories of employment discrimination: disparate treatment, past pattern or practice of discrimination and disparate impact. The case now before us was argued and analyzed at the trial level under the theory of disparate treatment.[10] Evaluation of a disparate treatment case involves three steps: (1) the plaintiff's prima facie case, (2) the defendant's burden of producing a legitimate, nondiscriminatory reason for discharging the plaintiff, and (3) an assessment by the court of all the evidence to determine if the defendant's nondiscriminatory reason for discharging the plaintiff was a pretext for a discriminatory motive. *See Maine Human Rights Commission v. Department*

*of Corrections*, 474 A.2d 860, 866–68 (Me. 1984); *Auburn I*, 408 A.2d at 1265–68.

■■■ In the case at bar, the trial court ruled that: (1) the plaintiff met her prima facie burden, (2) the defendant produced a legitimate, nondiscriminatory basis for discharging the plaintiff, and (3) the evidence considered as a whole demonstrated that the plaintiff's discharge was not the product of unlawful discrimination. The trial court's legal conclusion that the defendant satisfied its burden of producing a legitimate, nondiscriminatory basis for discharging the plaintiff was based on the following findings of fact: slow business justified the dismissal of a waitress and the defendant chose the plaintiff because she provided slower than acceptable service and had announced her intention to leave the restaurant voluntarily in the near future. We accept these factual findings of the trial court unless clearly erroneous. *See Margani v. Sanders*, 453 A.2d 501, 504 (Me. 1982).

The plaintiff argues, however, that, even accepting these findings as not clearly erroneous, the trial court erred as a matter of law by concluding that the defendant, by proving these facts, met its burden of producing a legitimate, nondiscriminatory basis for the plaintiff's discharge. The plaintiff contends that the fact that she would eventually leave the restaurant voluntarily is inseparable from the fact that she was pregnant and therefore cannot constitute a legitimate, *nondiscriminatory* reason for her discharge. Rather, the plaintiff asserts, it shows that the defendant discharged her *because she was pregnant* in violation of 5 M.R.S.A. § 4572–A(2) (Supp. 1984).

---

**10.** The plaintiff has not relied upon the theory of past pattern or practice of discrimination at any point during this litigation. The plaintiff's references to the disparate impact theory on appeal are misplaced. The facts proved at trial demonstrate the inappropriateness of this theory in the case at bar. The plaintiff did not allege or prove any "employer's practice (such

as a written or oral test or particular job requirement)," nor did she show any "group" impacted by the alleged discrimination. *See Auburn I*, 408 A.2d at 1264. Moreover, statistical evidence, the "primary method" of proof in a disparate impact case, played no part in the case presented by the plaintiff in the trial court. *See id.*

■ We agree with the plaintiff that the fact that a pregnant woman will eventually leave work due to her pregnancy is not a legitimate, nondiscriminatory reason to discharge that woman, regardless of whether she informs her employer of her inevitable departure. To hold otherwise would directly contravene section 4572–A(2) which commands that, except in the instance of a bona fide occupational qualification, an employer shall not treat a pregnant employee differently because of her pregnancy. In this case, however, more is involved. The trial court found that the defendant was confronted with a reduction of business and that the plaintiff provided less than acceptable service as a waitress. This constituted "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Department of Corrections*, 474 A.2d at 867 (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). Accordingly, the trial court did not err by concluding that the defendant met its burden of producing a legitimate, nondiscriminatory basis for the plaintiff's discharge.

### IV.

The plaintiff also contends that the trial court erred in its performance of the third step of the disparate treatment analysis, an assessment of all the evidence to determine whether the legitimate, nondiscriminatory reason offered by the defendant for the plaintiff's discharge is in fact a pretext for a discriminatory motive. *See Department of Corrections*, 474 A.2d at 867–68. The plaintiff first argues that the presiding justice committed reversible error by not making express findings concerning the pretext issue. Furthermore, the plaintiff asserts, an evaluation of all the evidence shows that the legitimate, nondiscriminatory basis for the plaintiff's discharge offered by the defendant was in fact a mere pretext and that the defendant did discharge her because she was pregnant, in violation of state law.

■ Although the presiding justice did not expressly use the term "pretext" in his written decision, it is clear from that decision that he carefully considered whether the legitimate, nondiscriminatory basis for the plaintiff's discharge offered by the defendant was substantiated by the evidence. We have no doubt that the trial court applied the proper disparate treatment analysis under Maine law, as originally articulated in our decision in *Auburn I*.

■ Finally, we uphold the trial court's ultimate conclusion that the plaintiff's discharge was not the result of unlawful discrimination. After reviewing the entire record, we cannot say the presiding justice erred by accepting the legitimate, nondiscriminatory basis for the plaintiff's discharge produced by the defendant. As we noted before, the fact that the plaintiff told her employer that she would eventually leave her job due to her pregnancy is *not* such a legitimate, nondiscriminatory reason. Indeed, the fact that the defendant considered the plaintiff's inevitable departure due to her pregnancy in deciding to discharge her is some evidence of a discriminatory animus. In this case, however, the evidence as a whole demonstrates a sufficient legitimate, nondiscriminatory basis for the plaintiff's discharge. The record supports the presiding justice's findings that slow business required the defendant to discharge a waitress and that the defendant discharged the plaintiff because she rendered less than adequate service. Accordingly, we uphold the decision of the trial court that the plaintiff's discharge was not the result of unlawful discrimination.

The entry is:

Judgment affirmed.

All concurring.