John F. DANIELS

v.

TEW MAC AERO SERVICES, INC.

v.

Fred STUART et al.

Supreme Judicial Court of Maine.

Argued Feb. 5, 1996.
Decided May 10, 1996.

William C. Knowles (orally), Laurie Williamson, Verrill & Dana, Portland, for Plaintiff.

Barbara T. Schneider (orally), Murray, Plumb & Murray, John J. Wall, III (orally), William R. Fisher, Monaghan, Leahy, Hochadel & Libby, Portland, for Defendants.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

ROBERTS, Justice.

Defendant and third-party plaintiff Tew Mac Aero Services, Inc., appeals from the judgment entered in the Superior Court (York County, *Fritzsche, J.*) on the jury's verdict finding it negligent and awarding damages in the amount of $60,000 to John Daniels. The jury also found in favor of Fred Stuart and Limington–Harmon Airport on Tew Mac's third-party complaint. Tew Mac's principal contention on appeal is that the trial court erred by excluding from the trial all references to a National Transportation Safety Board (the safety board) factual report of the airplane crash that is the basis of this action. We vacate the judgment.

In 1989 Glenn Dyer purchased a Cessna 182K single engine airplane from Limington–Harmon Airport, paying a premium price for an overhauled engine. The airport sent the engine and carburetor to Tew Mac Aero Services in Massachusetts for an overhaul in November 1989. The overhauled engine and carburetor were returned to the Limington–Harmon Airport in January 1990 and installed by Fred Stuart, the airport's manager and mechanic, in March 1990. Shortly after the carburetor and engine were installed, Dyer and John Daniels, an experienced pilot, attempted to fly the plane. The purpose of the flight was to "break-in" the recently overhauled engine pursuant to engine specifications. The flight ended in a crash when the engine failed within minutes of takeoff.

Following the accident the plane was returned to the airport under the direction of Federal Aviation Administration (FAA) investigators. Stuart, at the direction of the FAA investigators, attempted to start the engine. It would not start until the primer pump was used, and when the primer was

not used the engine died.[1] Stuart removed the carburetor from the plane and broke it down into two parts. Inside the carburetor the investigators found loose sand and dirt-like substances, as well as a caked-on rust-colored substance. Stuart testified at the trial that what was found inside the carburetor could not have gone through the fuel system because there are screens to filter out dirt and debris, and when he inspected the screens they were clean. Stuart agreed that it was important to check the screens for fuel contamination and that the presence of debris might suggest fuel contamination. Stuart concluded that the carburetor was defective. In a statement to the FAA after he had seen the carburetor taken apart, however, Stuart stated only that, with respect to the carburetor, he checked the needle valve and float seat and found no obvious defect. James Cobb, a licensed aircraft mechanic and pilot hired by Dyer to investigate the crash, also testified that there was no debris on the screens.

Tew Mac's theory of the case, which it offered to the jury chiefly through its expert, David Hessler, was that contamination within the fuel system led to the engine's failure. On cross-examination, counsel for Daniels raised and discussed the issue whether, if Hessler's theory was correct, one could expect to find debris on the screens.

Prior to the trial the court granted Daniels' and Limington–Harmon Airport's joint motion in limine to exclude "from admission in evidence or use at trial any part of the report of the National Transportation Safety

Board and the Federal Aviation Administration of the accident." Tew Mac was therefore not permitted to question Hessler with respect to the statement in the factual report that there was "minimal debris" found on the screens. The existence of any debris would have supported Tew Mac's theory that fuel contamination caused the crash. Tew Mac was also precluded from (1) questioning Hessler on the issue whether he relied on the report in reaching his conclusion, (2) pointing out to the jury the inconsistencies in the testimony of Stuart and Cobb and the factual report, and (3) questioning Stuart about the inconsistencies between his statement to the FAA that there were no obvious defects in the carburetor and his trial testimony that a defect in the carburetor caused the crash.

▉ In their joint motion to exclude the entire safety board report, Daniels and the airport argued that a plain application of 49 U.S.C.A. § 1441(e) (West 1976) (repealed 1994)[2] required exclusion of the entire report. Section 1141(e) provides:

> No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.

Tew Mac contends that a narrow construction of section 1441(e) is necessary to effectuate the intent of Congress. Tew Mac argues that such a reading of the statute is consistent with the safety board's current practice

---

1. The purpose of the primer pump is to bypass the carburetor and spray fuel into the engine. In a Cessna 182 fuel is stored in two separate tanks, one in each wing. The fuel travels through rubber hoses to an aluminum line and then to a fuel selector valve. As it passes through the hoses, the fuel goes through the first of three mesh screens. The fuel selector valve allows the pilot to choose the right, left, or both fuel tanks from which to receive the fuel. The fuel exits from the fuel selector valve in one hose to a gascolator, a screen that separates debris from the fuel. From the gascolator the fuel travels through an inlet screen in the carburetor and then into the carburetor itself. There the fuel is mixed with air to support combustion.

2. In its most recent revision of Title 49, Congress has combined section 701(e) of the Federal Avia-

tion Act (49 U.S.C.A. § 1441(e)) with section 304(c) of the Independent Safety Board Act, describing the powers and duties of the safety board. 49 U.S.C.A. § 1154(b) (West Pamph. 1995). Section 1154(b) provides:

> No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report.

P.L. 103–272, § 1(d), July 5, 1994, 108 Stat. 758. The legislative history of this revision suggests that no substantive changes were intended by the combination of the two sections or the minor word changes. H.R.Rep. No. 180, 103rd Cong., 2d Sess. 5 (1994), reprinted in 1994 U.S.C.C.A.N. 818, 822.

of generating two reports, one factual and one probable cause, and that because the FAA and the safety board have complete control over plane crash wreckage following an accident, they often are in possession or control of the most probative, if not the only, evidence available. We review a trial court's interpretation of a statute for errors of law. *Thibeault v. Larson,* 666 A.2d 112, 114 (Me. 1995). We first examine the plain meaning of the statutory language, seeking to give effect to the legislative intent. *Id.* In so doing, we remain mindful of the whole statutory scheme, of which the section at issue forms a part, so that a harmonious result may be achieved. *Id.* In addition, we accord great deference to an administrative agency's interpretation of a statute administered by it. *Centamore v. Department of Human Servs.,* 664 A.2d 369, 370–71 (Me. 1995).

## I.

■ The safety board's report in this case is comprised of two parts, as required by 49 C.F.R. § 835.2 (1995), which provides for the production of two reports, a board's accident report and a factual accident report. The board's accident report consists of "the Board's determinations, including the probable cause of an accident, issued ... in a computer format (briefs of accidents).... [N]o part of these reports may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." In the instant case, the safety board's brief of accident, or probable cause determination, constitutes two pages of the forty-page report. The board concluded that the probable cause of the accident was "fuel starvation, due to carburetor contamination." The remainder of the report excluded by the court contains the so-called factual accident report and consists of the first thirty-eight pages of the forty-page report.[3]

The federal courts are in disagreement regarding the admissibility of the factual portions of the safety board's reports, as distinguished from the probable cause portions of those reports. The majority view supports the use of the factual reports, concluding that the purpose of the statutory bar is to prevent usurpation of the jury's role as the factfinder, a purpose fully served by excluding from evidence the opinions or conclusions regarding the probable cause of accidents. *See Mullan v. Quickie Aircraft Corp.,* 797 F.2d 845, 848 (10th Cir.1986). In *Mullan,* the circuit court held that the district court had not erred in allowing the plaintiff's expert to testify based in part on his review of safety board reports. *Id.* The court noted that the expert had relied only on the factual portions of the report, and refused to infer that he had impermissibly relied on the agency's probable cause determinations merely because his conclusions were the same as or similar to those of the agency. *Id. See also Curry v. Chevron, USA,* 779 F.2d 272, 274–75 (5th Cir.1985) (district court correctly allowed plaintiff's expert to testify as to his reliance on data in safety board report in reaching his own conclusion and in not allowing expert to testify that he relied on the probable cause determination); *Travelers Ins. Co. v. Riggs,* 671 F.2d 810, 816 (4th Cir.1982) (district court properly excluded conclusory sections of report; parties did not challenge court's admission of factual portions of report); *Keen v. Detroit Diesel Allison,* 569 F.2d 547, 549–51 (10th Cir.1978) (analysis of federal circuit and district court interpretations leads to conclusion that "[t]he ... rule, which prohibits only conclusory opinions as to the ultimate issue of probable cause of the accident, seems more consistent with the policy considerations which prompted the enactment of 49 U.S.C. § 1441(e), namely, 'to guard against the introduction of [safety board] reports expressing agency views about matters which are within the functions of courts and juries to decide.'" (citations omitted)); *McLeod v. ERA Aviation, Inc.,* No. CIV.A. 93–294, 1996 WL 109302, at *1–*2 (E.D.La. March 12, 1996) (in denying defendant's motion *in limine* to exclude factual portions of safety board report, court recognizes that purpose of statutory

3. The factual accident report in this case consists of eyewitness statements, discrepancy and corrective action reports, and observations made by the investigators, including Daniels' expert, Stuart, during the investigation.

exclusionary rule is to prevent ursurpation of jury's role as factfinder, and purpose is served by excluding opinions, conclusory statements, or conclusions contained in the report); *Petition of Cleveland Tankers, Inc.,* 821 F.Supp. 463, 464 (E.D.Mich.1992) (recognizing "judicial gloss" of other federal courts and holding that factual contents of safety board reports are admissible in evidence); *Budden v. United States,* 748 F.Supp. 1374, 1376–77 (D.Neb.1990), *vacated on other grounds* 963 F.2d 188 (8th Cir.1992) (allowing admission of safety board report of helicopter crash where portions sought to be admitted contained no opinions or conclusions of the board); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo.,* 720 F.Supp. 1493, 1496 (D.Colo.1989) (recognizing legislative history supports position that purpose of statute was to prevent usurpation of jury's role, allows evidentiary use of factual portions of report); *Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 639 F.Supp. 385, 393 n. 4 (E.D.Tex.1986), *modified by* 828 F.2d 278 (5th Cir.1987) (factual portions of safety board report are admissible); *Beech Aircraft Corp. v. Harvey,* 558 P.2d 879, 882–83 (Alaska 1976) (upholding trial court's decision to allow testimony of safety board's investigator on only factual issue and not ultimate issue of probable cause); *Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 893 P.2d 26, 34 (Ct.App. 1994) (recognizing that majority view is to allow admission of factual findings in safety board report); *Todd v. Weikle,* 36 Md.App. 663, 376 A.2d 104, 111 (1977) (trial court correctly admitted factual portions of report and excluded opinions as to possible causes of accident).

Our research reveals, and Daniels has cited, only one case that fully supports the court's complete exclusion, for any purpose, of both the factual accident report and briefs of accident probable cause determination of the safety board. *In re Air Crash Disaster at Sioux City, Iowa,* 780 F.Supp. 1207 (N.D.Ill.1991), stands for the proposition that section 1441(e) "leave[s] no room for creative interpretation. The language, on its face, states an absolute bar to the use of NTSB reports." *Id.* at 1208–09. The *Sioux City* court's main concern applicable to this case in rejecting the "judicial gloss" applied to

section 1441(e) is the distinction it draws between the use of any part of the report versus investigator testimony, concluding that the former is barred but the latter, pursuant to 49 C.F.R. § 835.2, is allowed. *Id.* at 1209–10. Although *Sioux City* recognized that Congress's purpose in enacting the bar was "to preserve the functions of court and jury uninfluenced by the findings of the Board or investigators," it does not explain how the evidentiary use of factual information contained in the factual report has any substantive difference from factual information testified to by an investigator at a deposition (as permitted by 49 C.F.R. § 835.3(b)). *Id.* at 1210. The *Sioux City* court's reference to the regulation's "clear and unequivocal" distinction between the two uses, we believe, is misplaced. That is because, first, the court cites language contained in the Code of Federal Regulations that specifically regulates the testimony of board employees, and, second, the language that states "no part of these reports may be admitted as evidence" refers to "the report containing the Board's *determinations,* including the *probable cause* of an accident." 49 C.F.R. § 835.2 (emphasis added).

■ The purpose of reviewing the plain language of a statute is to give effect to the legislative intent. *Thibeault v. Larson,* 666 A.2d at 114. The legislative intent of section 1441(e), as interpreted by most of the federal courts that have considered the issue, is twofold: to keep the board from becoming embroiled in civil litigation and to prevent a usurpation of the factfinder's role. Permitting factual portions of the board's accident investigation does not defeat either of these purposes. Allowing litigants to use the factual portions of the report would in fact be significantly less intrusive than requiring board employees to be involved in depositions. We conclude therefore that the trial court's application of section 1441(e) is erroneous. That conclusion, however, does not establish the admissibility of those portions of the report, as they are still subject to our rules of evidence.

## II.

■ Erroneous rulings of the trial court must be disregarded unless they affect the

substantial rights of the parties. M.R.Civ.P. 61; *Procise v. Electric Mut. Liability Ins. Co.,* 494 A.2d 1375, 1380 (Me.1985). A new trial should be ordered only when not doing so "appears to the court to be inconsistent with substantial justice." M.R.Civ.P. 61. Daniels contends that even if the court did err in excluding the factual report from any use at trial, the error was harmless because Tew Mac (1) had no means by which it could introduce the report into evidence, (2) was precluded from questioning its own expert regarding the substance of the factual report pursuant to Maine law, and (3) could not have used the report to cross-examine his experts, Stuart and Cobb, because they did not prepare the report.

Tew Mac's purpose in having the factual portions of the safety board report admitted in evidence was to support its expert's theory that fuel contamination caused the plane to crash. The statement in the report that there was "minimal debris" on two of the three screens meant to filter the fuel as it travels to the carburetor would have supported this theory. As an out-of-court statement offered to prove that there was in fact minimal debris on the screens, that statement is hearsay. M.R.Evid. 801(c). The question whether the report falls within an exception to the hearsay rule is governed by M.R.Evid. 803(8), which provides in pertinent part:

The following are not excluded by the hearsay rule....

(8) **Public Records and Reports.**

(A) To the extent not otherwise provided in (B), records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

(B) The following are not within this exception to the hearsay rule: ... (iv) factual findings resulting from special investigation of a particular complaint, case, or incident....

We examine the nature of the safety board's report with regard to the public records and reports exception to the hearsay rule. "The National Transportation Safety Board shall investigate each accident involving civil aircraft," 49 U.S.C.A. § 1132(a)(1)(A) (West Pamph.1995) (formerly 49 U.S.C.A.App. § 1441(a)(2) and 49 U.S.C.A.App. § 1903(a)(1)(A)), and "shall report on the facts and circumstances of each accident investigated by it," 49 U.S.C.A. § 1131(d) (West Pamph.1995). The safety board report is therefore a report of a public agency setting forth matters observed pursuant to a duty imposed by law as to which there is a duty to report. Daniels argues, however, that the factual material contained in the report results from an investigation of a particular incident, namely, a plane crash, and as such is rendered inadmissible by M.R.Evid. 803(8)(B)(iv).

We have previously held that a Maine Human Rights Commission investigator's report, "prepared directly in response to the plaintiff's 'particular complaint,'" falls within Rule 803(8)(B)(iv) and is therefore not admissible as a public record or report. *Tiemann v. Santarelli Enterprises, Inc.,* 486 A.2d 126, 131 (Me.1984). In *Tiemann,* the plaintiff was fired from her job as a waitress approximately three months after she informed her employer that she was pregnant. *Id.* at 128–29. The plaintiff filed a complaint with the Commission, and, after attempts to promote an informal settlement proved unsuccessful, filed a complaint in the Superior Court. *Id.* at 129. Although Daniels is correct that the report at issue in the instant case concerns an investigation of a particular incident, there is a significant distinction between the investigative report held inadmissible in *Tiemann* and the factual report of the safety board.

Rule 803(8)(B)(iv) excludes factual findings that result from a special investigation of a particular complaint, case, or incident. The safety board, as a significant part of its regular duties, investigates *all* civil aircraft accidents. Nobody requests the safety board to investigate; it is one of the board's primary responsibilities. In contrast, the Commission does not investigate all firings, only those that result from particular complaints. What

made the investigation in *Tiemann* special was that it resulted from a particular complaint. *E.g., Crockett v. City of Billings,* 761 P.2d 813, 820 (Mont.1988) (applying identical rule to exclude factual findings directly resulting from investigation of particular complaint of discrimination); *Swart v. Town & Country Home Center, Inc.,* 2 Ark.App. 211, 619 S.W.2d 680, 683 (1981) (applying similar rule to bar admission of U.S. Department of Labor investigator's report resulting from anonymous tip). Likewise, if a tip or complaint were forwarded to the safety board regarding civil aviation violations and an investigative report were made, the factual findings contained in that report would be inadmissible in Maine pursuant to Rule 803(8)(B)(iv). This distinction may be illustrated by the example of a public agency charged with monitoring water quality in the state's rivers. If the agency, in fulfillment of its routine duties, tests the water in a flooding river (i.e., resulting from a particular incident, namely, the flood), the factual findings of those tests would be admissible in a civil trial as within the public records or reports exception to the hearsay rule. If, however, the agency conducts an investigation in response to a complaint that someone is dumping material into a river, the factual results of that investigative report would be excludable pursuant to Rule 803(8)(B)(iv).

The preceding illustration highlights one of the primary underpinnings of the Rule 803(8) exception, namely, the assumption that *routine* reports by public officials in their official duties will be prepared properly. M.R.Evid. 803(8) advisers' note. That assumption may be suspect when a public official prepares a *special* report in response to a particular complaint, case, or incident as opposed to merely carrying out routine duties. There may be a greater likelihood that a *special* report will be influenced by persons interested in the outcome. The 803(8)(B)(iv) exception guards against the risk of people using public agency investigations as a litigation tool by banning as evidence at the trial the factual findings contained in *special* reports that result from particular complaints, cases, or incidents. The risk of such an abuse is not present in a case such as this where the safety board investigates all airplane crashes, regardless of the future purposes for which its factual findings may be used. Because plane crashes are always specific, all of the safety board's factual accident reports necessarily concern specific events. The investigations, however, are not special because the safety board's duty is to investigate all accidents for the purposes of, among other things, reducing the likelihood of recurrence and making recommendations to Congress on how to better promote safe flying. *See* 49 U.S.C.A. § 1117 (West Pamph.1995). The report, therefore, comes within the public reports exception to the hearsay rule and is not excluded from that exception by Rule 803(8)(B)(iv).

Neither of Daniels' other two arguments regarding the use of factual information contained in the report present hearsay problems. First, Tew Mac's expert, Hessler, although he could not have testified to the substance of the report, should have at least, pursuant to M.R.Evid. 703, been permitted to testify that he relied on the report in reaching his conclusions. *Henriksen v. Cameron,* 622 A.2d 1135, 1144 (Me.1993) (expert permitted, pursuant to M.R.Evid. 703, to testify about reliance on a report of "facts or data ... of a type reasonably relied upon by experts in the particular field" but may not testify to substance of report relied upon). Second, both of Daniels' experts testified that they looked at the screens at the time of the investigation and saw no debris, contrary to the information in the report.[4] Additionally, Stuart testified that he concluded that the cause of the crash was a defective carburetor, but in a statement he gave to the FAA investigators, he said only that, with regard to the carburetor, he found no obvious defect in the needle valve and float seat. Tew

---

**4.** Daniels expressed concern at oral argument that if the factual report were admitted in evidence there would be no procedure by which the opponents of the evidence, Daniels and Limington–Harmon Airport, could cross-examine the document to determine exactly what "minimal debris" meant. This problem is encountered any time a document is admitted in evidence, and in this case there is a procedure available to Daniels and Limington–Harmon Airport; namely, pursuant to 49 CFR § 835, the maker of the factual report may be deposed.

Mac's attempts to question Daniels' experts regarding those inconsistencies would obviously be for impeachment purposes only and the statement therefore would not be hearsay because it was not offered for the truth of the statement.

Because Tew Mac's theory of the crash is supported by the erroneously excluded factual report and because Daniels' experts testified contrary to that report, we conclude that the court's error is prejudicial.

The entry is:

Judgment vacated.

All concurring.