## DEPARTMENT OF HUMAN SERVICES

v.

## Frank M. SABATTUS.

Supreme Judicial Court of Maine.

Argued Feb. 7, 1996.

Decided Sept. 20, 1996.

Andrew Ketterer, Attorney General, James A. McKenna (orally), Diane E. Doyen, Assistant Attorneys General, Augusta, for Plaintiff.

Dennis L. Mahar (orally), Fletcher & Mahar, Calais, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Frank Sabattus appeals from the judgment entered in the Superior Court

(Washington County, *Marsano, J.*) affirming in part and vacating in part the judgment entered in the District Court (Calais, *Romei, J.*) determining paternity and authorizing the Department of Human Services and the child's mother to collect past and future expenses relating to child support. Sabattus contends that an adoption decree entered in the Washington County Probate Court relieves him of any duty to support the child, and that the District Court erred by denying his motion pursuant to M.R.Civ.P. 60(b) for relief from the judgment. The Department cross-appeals, contending that the Superior Court erred in concluding that the adoption decree is valid and bars the Department from bringing an action on behalf of the child's mother. Although we do not conclude that the adoption decree is void, we nevertheless determine that, in the absence of the child support obligations being assumed by an additional party, the adoption of the child by its natural mother does not relieve Sabattus of his obligation to pay child support. Accordingly, we vacate the judgment of the Superior Court and remand for the entry of a judgment affirming the judgment of the District Court.

The Department commenced this action against Sabattus in the District Court pursuant to 19 M.R.S.A. §§ 271, 272 & 448–A (1981 & Supp.1995) on its own behalf and on behalf of Kathy H. to determine paternity and establish a child support obligation regarding a child born to Kathy H. out of wedlock in 1986. Sabattus admits paternity but denies any duty to support the child because he contends that an adoption decree issued to the child's natural mother, Kathy H., relieves him of any further obligation to pay child support. The court determined Sabattus to be the biological father of the child, and entered judgments of paternity and for the payment of child support and medical expenses on behalf of the State and Kathy H. in the amount of $22,050.66. The court further ordered Sabattus to pay current child support in the amount of $72 per week. Sabattus filed a motion for relief from the judgment, M.R.Civ.P. 60(b), as well as an appeal to the Superior Court. The District Court denied Sabattus's Rule 60(b) motion.

On appeal, the Superior Court affirmed that part of the District Court judgment concluding that the Department is entitled to reimbursement from Sabattus for past and future child support expenses. The court vacated that part of the judgment obligating Sabattus to pay monies to the Department on behalf of Kathy H., holding that the adoption decree precludes the Department from acting on behalf of the adoptive mother against the father who consented to the adoption. The Superior Court remanded to the District Court for a determination of the past and future amounts of support that the Department had expended or will expend on behalf of the child. The appeals by Sabattus and the Department followed.

When the Superior Court acts as an intermediate appellate court, we review directly the decision of the District Court. *Page v. Page*, 671 A.2d 956, 957 (Me.1996). We review for an abuse of discretion the denial of a motion for relief from a judgment. *McKinley v. McKinley*, 651 A.2d 821, 823 (Me.1994).

The adoption petition on which Sabattus relies to relieve him of the obligation to support his child was brought by Kathy H. in the Probate Court. Sabattus, as the child's father, consented to the adoption of the child by Kathy H., and a decree to that effect was granted on October 29, 1991. No action has been brought by the Department to set aside that adoption decree. Sabattus contends that the District Court abused its discretion by denying his motion for relief from the judgment and erred by holding that the adoption decree does not relieve him from all parental responsibilities regarding support payments for the child. He contends that because a natural parent may adopt her own child, and because the adoption statute in effect at the time provided that "the natural parents are divested of all legal rights in respect to such child," and that the child is "to all intents and purposes the child of his adopters," 19 M.R.S.A. § 535 (1981), *repealed by* P.L.1993, ch. 686, § 3 (effective Aug. 1, 1994), any duty of support regarding the child has been terminated. In particular, Sabattus relies on language formerly found in 19 M.R.S.A. § 531 (1981) providing that "[a]ny husband and wife jointly, or *any un-*

*married person,* resident or nonresident of the State of Maine, may petition the probate court to adopt a person, regardless of age...." [1] (Emphasis added.) He points to the repeal of prior language limiting adoption by adults to children "not theirs by birth" [2] as an indication of legislative intent that the adoption by the child's mother is valid. Because the adoption is valid, he argues, it operates to terminate his obligation of support. We disagree.

■ We construe our adoption statutes to protect the rights and privileges of the child being adopted. *In re Goodwin's Estate,* 147 Me. 237, 243–44, 86 A.2d 88 (1952); *see also Porter v. Hoffman,* 592 A.2d 482, 487 (Me. 1991) (referring to state's interest in the welfare of the child in the context of adoption). We previously have held that the overriding concern of serving the best interest and welfare of a minor child requires that support obligations be treated as the equal responsibility of both the mother and the father, to be discharged in accordance with their respective ability and capacity. *Gardner v. Perry,* 405 A.2d 721, 725 (Me.1979).

■ As the child's father, Sabattus owes a duty of support to that child. 19 M.R.S.A. § 271. The obligation may be enforced by the child's mother and by the Department. 19 M.R.S.A. §§ 271, 448 & 448–A. The obligation to support a child cannot be terminated by agreement between the child's parents. *See Department of Human Servs. v. Webster,* 398 A.2d 792, 794 (Me.1979) (court approved paternity settlement entered into by mother and father did not bar Department from bringing action to compel father to contribute to child's support).

■ Although a number of jurisdictions have held in similar contexts that an adoption by a child's natural parent is void or voidable, *see, e.g., State ex rel. T.R.L. by Avery v. R.L.P.,* 772 P.2d 1054, 1058 (Wyo.1989) (adoption of her own child by mother with no plans for marriage purporting to terminate child support obligation of father void in

absence of adequate representation of child's interests), *Peregood v. Cosmides,* 663 So.2d 665, 669–70 (Fla.Dist.Ct.App.1995) (custodial parent's agreement in adoption context to release noncustodial parent from obligation to pay court ordered child support in exchange for noncustodial parent's agreement to relinquish visitation rights is voidable); *Green v. Sollenberger,* 656 A.2d 773, 778–79 (Md.1995) (adoption statute cannot be used as mechanism for natural mother to sever natural father's rights and obligations to child), the applicable statutory language on its face allows a single biological parent to adopt her own child. 19 M.R.S.A. § 535 provides that a natural parent who consents to the child's adoption gives up his legal *rights* with respect to the child. Unlike the language provided in 22 M.R.S.A. § 2056, dealing with the termination of parental *duties and responsibilities,* section 535 does not explicitly provide for the termination of the parent's *responsibilities.* 19 M.R.S.A. § 535. Based on that language, and the strong interest the state has in protecting the interests of children and insuring that both parents contribute to the support of their children, *see* 19 M.R.S.A. §§ 271, 272, 273, 448–A, we conclude that an adoption of a child by the natural mother, in the absence of a corresponding assumption of those child support obligations by a new person, such as the mother's husband, does not operate to allow the father to avoid his support obligations when the child's interests are not represented in the adoption proceeding.

The entry is:

Judgment of the Superior Court vacated. Remanded for the entry of a judgment affirming the judgment of the District Court.

WATHEN, C.J., and RUDMAN and DANA, JJ., concurring.

GLASSMAN, Justice, joined by ROBERTS and LIPEZ, Justices, dissenting.

Because I do not agree with the Court that the adoption of the child severed Sabattus's

---

1. 19 M.R.S.A. §§ 531–538 (1981), in effect at the time of the adoption proceeding, have since been repealed, P.L.1993, ch. 686, § 3 (effective Aug. 1, 1994), and replaced by 19 M.R.S.A. §§ 1101–1136 (Supp.1995); P.L.1993, ch. 686, § 5.

2. The language, formerly found in R.S. ch. 72, § 35 (1916), was deleted by P.L.1921, ch. 124, § 35 (effective July 9, 1921).

parental rights but not his parental responsibilities, I respectfully dissent. Well established principles of statutory construction require that words must be given their plain meaning and " 'statute[s] must be construed as a whole in order to effectuate the legislative intent.' " *McGillivray v. Royal Ins. Co.*, 675 A.2d 524, 526 (Me.1996) (quoting *Fernald v. Maine State Parole Bd.*, 447 A.2d 1236, 1238 (Me.1982)). In so doing, the court must be mindful of the "whole statutory scheme ... so that a harmonious result may be achieved." *Daniels v. Tew Mac Aero Services, Inc.*, 675 A.2d 984, 987 (Me.1996) (citing *Thibeault v. Larson*, 666 A.2d 112, 114 (Me.1995)). In addition to failing to apply these principles, by its decision the Court approves a construction of the statute that could have serious implications affecting an adopting parent's ability to obtain the consent of the natural parent(s) if consent means that all parental rights are relinquished, but all parental financial responsibilities remain. Such public policy determinations are more properly reserved to the Legislature.

Because the Department of Human Services neither appealed from, nor initiated an action to set aside, the 1991 adoption decree, I agree with the Court that the adoption is valid. We are asked here to determine the effect of the provisions of the adoption statute as they relate to the obligations of a natural parent who consents to an adoption. The Court answers this query by focusing on the first sentence of 19 M.R.S.A. § 535 (1981), *repealed by* P.L.1993, ch. 686, § 3 (effective Aug. 1, 1994), finding dispositive the language divesting the natural parent's legal *rights* and the absence of language expressly removing the natural parent's legal *responsibilities*. Reading the statute as a whole, however, as we must, *McGillivray*, 675 A.2d at 526, it becomes clear that such an interpretation does not give effect to the plain meaning of the words of the Legislature.

At the time of Kathy H.'s petition, the provision within our adoption statute setting forth the legal effect of an adoption, 19 M.R.S.A. § 535, provided in pertinent part:

> By such decree *the natural parents are divested of all legal rights in respect to such child* and he is freed from all legal obligations of obedience and maintenance in respect to them. He is, for the custody of the person *and right of obedience and maintenance, to all intents and purposes the child of his adopters....*

(Emphasis added). The emphasized language establishes that, as of the effective date of the adoption, Kathy H. became the sole legal parent of the child, acquiring not only the sole parental rights to the child, but also all of the responsibilities as well.[3] Because the adoption had the effect of terminating Sabattus's parental rights, *Porter v. Hoffman*, 592 A.2d 482, 486 (Me.1991), the provisions of the adoption statute at issue must be construed in conjunction with the provisions of the statutes governing the termination of parental rights, 22 M.R.S.A. §§ 4050–4058 (1992 & Supp.1995), to avoid inconsistent results. *Daniels*, 675 A.2d at 987. Section 4055 of Title 22 permits the court to order the termination of parental rights, *inter alia,* if "[t]he petition has been filed as part of an adoption proceeding in Title 19, [sections 531–538]; and ... [t]he parent consents to the termination." Once approved by the court, "[a]n order terminating parental rights divests the parent and child of all legal rights, powers, privileges, immunities, duties *and obligations to each other as parent and child....*" 22 M.R.S.A. § 4056 (emphasis added). The Court's construction of 19 M.R.S.A. § 535, terminating parental rights without terminating parental responsibilities, is impermissibly at odds with 22 M.R.S.A. § 4056 and cannot survive our precedents governing statutory construction.

Nor may the Department, having failed to challenge the adoption, now seek to impose

---

**3.** By her petition for the adoption of the child, Kathy H. asserted, *inter alia,* that she "ha[s] the ability to provide for the adopted child." Before granting her petition, the court must have been satisfied, *inter alia,* of the "ability of [Kathy H.] to bring up and educate the child properly, having reference to the degree and condition of [Kathy H.] and of the fitness and propriety of such adoption." 19 M.R.S.A. § 533. Having availed herself of the provisions of the adoption statute, thereby attaining sole parental rights to the child, she cannot now take the benefit of that order while casting aside the responsibilities that go with it.

the financial obligations for the child on one who is no longer legally a parent of the child. *Cf.* 19 M.R.S.A. §§ 271, 272 (establishing the obligations of a *father* and the Department's and/or mother's right to enforce those obligations against the *father*). This conclusion is not inconsistent with our decision in *Dep't of Human Servs. v. Webster*, 398 A.2d 792, 794 (Me.1979). In *Webster*, the natural parents of the child entered into a court-approved agreement in settlement of a paternity suit filed by the mother that purported to release the father from any further financial obligation for the child. Because "the child was being supported by the State through the program for Aid to Families with Dependent Children," the State brought a petition against the father to enforce his parental support obligations. *Id.* at 792–93. By his answer, the father relied on 19 M.R.S.A. § 283 (1981) that provides: "An agreement of settlement with the alleged father is binding only when approved by the court." Finding in favor of the Department, we held that the interests of the mother were divergent from the interests of the State and of the child and the settlement by the mother and father was not binding on the State. *Id.* at 794.

The dispositive distinction between *Webster* and the instant case is that following the court's approval of the settlement between the parents, the child in *Webster* legally continued to have two parents. Here, by contrast, following the judgment of adoption, the child legally had only one parent: Kathy H. Although Sabattus remains obligated for the amounts expended by the State in support of the child for the period prior to the effective date of the adoption and within the time limits provided in 19 M.R.S.A. § 273 (Supp. 1995),[4] his parental rights, as well as his financial responsibilities, terminated with the judgment of adoption.[5] I would vacate the decision of the Superior Court and remand this case to the District Court for a determination of Sabattus's financial obligations as articulated herein.

---

**4.** 19 M.R.S.A. § 273 (Supp.1995) provides in pertinent part:

The father's liabilities for past education and necessary support are limited to a period of 6 years next preceding the commencement of an action.

**5.** The Department does not allege, and the record would not support, that the adoption proceeding was a sham to implement an agreement between Sabattus and Kathy H. to reduce their financial child support obligations.