STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-167

STEPHANIE CHAPMAN,

Plaintiff

NOV 10 '22 PM6:30
ANDRO SUPERIOR COURT

v.

ORDER ON MOTIONS IN LIMINE

MARCEL'S BARBER SHOP and
TINA CROTEAU

Defendant

There are two motions in limine pending before the court, concerning three pieces of

evidence. Plaintiff Stephanie Chapman seeks to exclude tax audit results, and testimony

concerning these results, from the Maine Department of Labor ("MDOL") on the basis that the

document is inadmissible hearsay and that it is irrelevant and unreliable. Defendant Tina Croteau

seeks to exclude evidence of lease agreements pursuant to M.R. Evid. 401. Ms. Croteau also

seeks to exclude certain text messages between Ms. Chapman and third parties as inadmissible

hearsay.

## I.     MDOL Audit Results

Ms. Chapman argues that the MDOL documents are inadmissible hearsay pursuant to

M.R. Evid. 802. Ms. Croteau argues that the documents fall within the exception to the hearsay

rule for public records. M.R. Evid. 803(8).

Hearsay documents may be admissible under M.R. Evid. 803(8) if the records are public

documents. Public documents are records or statements of a public office that set out "(i) [t]he

office's regularly conducted and regularly recorded activities; (ii) [a] matter observed while

under a legal duty to report; or (iii) [f]actual findings from a legally authorized investigation."

1

The rule excludes "factual findings from special investigation of a particular case, complaint, or incident." M.R. Evid. 803(8)(iv). Ms. Chapman argues that the MDOL audit was prompted by her complaint to the Office of Professional Regulation/Board of Barbering and Cosmetology, and the subsequent referral of that complaint to the MDOL. Thus, Ms. Chapman argues, the audit is a special investigation of a particular complaint, and not subject to the public records exception. Ms. Croteau argues that the MDOL has the statutory authority to audit any business, and does not need to do so in response to a complaint.

The Law Court has found that factual findings from investigations conducted by the Maine Human Rights Commission ("HRC") are not admissible pursuant to the public records exception. *Tiemann v. Santarelli Enterprises, Inc.*, 486 A.2d 126, 131-32 (Me. 1984). This does not mean that factual findings from any report concerning a specific incident are inadmissible. In *Daniels v. Tew Mac Aero Servs.*, 675 A.2d 984, 989-91 (Me. 1996), the Law Court found that factual findings in a report prepared by the National Transportation Safety Board ("NTSB") concerning an airplane crash were admissible. The Law Court distinguished the NTSB report from the HRC report because the NTSB has a statutory duty to investigate all airplane crashes for a variety of safety purposes. *Id.* at 990. The HRC report was different, as the HRC investigation was the result of a particular complaint. *Id.*

The parties differ on whether the audit results qualify as a report coming from a special investigation of a specific complaint or whether it is simply a public record. Contrary to Ms. Croteau's assertions, an audit by the MDOL is not necessarily the same as an investigation by the NTSB. Unlike the NTSB, which has a duty to investigate every airplane crash as a matter of course, the MDOL has the discretion to choose what audits it conducts. The MDOL does not need a tip or complaint in order to initiate audit, there is no suggestion that this audit was

2

triggered automatically like the NTSB report in *Daniels*. That said, Ms. Chapman has not made a showing, through admissible evidence or otherwise, that the MDOL audit was prompted by her complaint to the Board of Barbering and Cosmetology. The court would need to see more information from Ms. Chapman confirming that the referral of her complaint was the event that prompted the MDOL audit before it could be categorized as a special investigation under the rule. This will not be necessary in this case, however, as the report is not admissible regardless.

The dispute over whether the MDOL audit is a special investigation or not is largely academic, because the "report" does not contain any factual findings. The report is a one-page document with bare legal conclusions, most importantly, "The audit concluded that there were no employees at your business and that you were in compliance with State and Federal Unemployment Tax Law given the provision set forth in Section 1043(11)(F)(19)." (Pl.'s Ex. C.) Opinions and conclusions from reports are not admissible pursuant to the public records exception. *See Reardon v. Larkin*, 2010 ME 86, ¶ 2 n.1, 3 A.3d 376; *Tiemann*, 486 A.2d at 131 n.9. The audit results must be excluded, as the document contains nothing but opinions and conclusions.

The court will defer decision on whether the testimony of the MDOL auditor, Thomas LaFlamme, is admissible. The court does not have enough information on what Thomas LaFlamme would testify to at this stage to make a ruling on admissibility.

## II. Lease Agreements

Ms. Croteau seeks to exclude certain lease agreements signed by other booth renters on the basis that they are not relevant to the relationship between her and Ms. Chapman. *See* M.R. Evid. 401. The standard for relevance is very low. *In re M.S.*, 2014 ME 54, ¶ 10, 90 A.3d 443. All that is required to satisfy the relevance standard is that the proffered evidence either (a) has

3

"any tendency to make a fact more or less probable than it would be without the evidence" and (b) "[t]he fact is of consequence in determining the action." Ms. Chapman did not have a written lease with Ms. Croteau or Marcel's Barber Shop. Lease agreements with other booth renters are relevant to show the usual practice of Marcel's and Ms. Croteau when it formed business relationships with independent contractors and booth renters. Any difference between Ms. Chapman's relationship to Ms. Croteau and Marcel's and third-party booth renters relationships to Ms Croteau and Marcel's is relevant to whether Ms. Chapman was an employee or an independent contractor. The evidence is admissible and the motion in limine will be denied.

## III.     Text Messages

Ms. Croteau also seeks to exclude text messages between Ms. Chapman and a third party, Heather Swift, on the basis that these text messages are inadmissible hearsay. Ms. Chapman argues that these text messages, if they are offered at all, will not be used to prove the truth of the matter asserted. Ms. Chapman states that she would offer the text messages for one of two reasons: to establish a basis for Ms. Chapman's or Ms. Swift's personal knowledge, or, in the case of one particular text message, for the effect it would have on Ms. Chapman.

The text messages should not be needed to establish personal knowledge of events, the witnesses should be able to testify as to the source of her personal knowledge of events she wishes to testify to without the introduction of out of court statements. As for the text message purportedly being offered for the effect on Ms. Chapman, the court will defer ruling to trial.

The entry is

> Plaintiff Stephanie Chapman's Motion in Limine is
> GRANTED in part. The proffered Maine Department of
> Labor audit result is inadmissible hearsay and will be
> excluded. Ruling as to the testimony of Maine of Thomas
> LaFlamme is deferred to trial.

4

Defendant Tina Croteau's Motion in Limine is DENIED.
Lease agreements from third parties will be admissible in
evidence and ruling on the subject text messages is deferred
to trial.

The Clerk is directed to enter this order into the docket by
reference pursuant to M.R.Civ.P. 79(a).

Date: November 10 , 2022

Harold Stewart, II
Justice, Superior Court

5